96 P.3d 1078

**Isabelle SCHONEBERGER, a single woman, Plaintiff–Appellee,**

v.

**J. Phillip OELZE, Sr.; Bert J. Schoneberger and Linda Schoneberger, husband and wife; Anastasia Diane Michas, Defendants–Appellants.**

**Valerie Schoneberger, a single woman, Plaintiff–Appellee,**

v.

**J. Phillip Oelze, Sr.; Bert J. Schoneberger and Linda Schoneberger, husband and wife; Anastasia Diane Michas, Defendants–Appellants.**

No. 1 CA–CV 03–0490.

Court of Appeals of Arizona.
Division 1, Department E.

Aug. 31, 2004.

David W. Eagle, Phoenix, for Defendants–Appellants.

Karp, Heurlin & Weiss, P.C., by Brian A. Laird, Tucson, for Plaintiff–Appellee.

## OPINION

NORRIS, Acting P.J.

¶ 1 Arizona has enacted legislation validating and enforcing provisions in "written contracts" requiring arbitration of future controversies. See Arizona Revised Statutes ("A.R.S.") section 12–1501 (2003).[1] The issue presented in this appeal is whether an arbitration provision in an instrument establishing an irrevocable inter vivos trust may be enforced against trust beneficiaries who sued the trustors and trustees. We hold the trust beneficiaries are not required to arbitrate their claims because such a trust is not a "written contract" requiring arbitration.

## FACTS AND RELEVANT PROCEEDINGS[2]

¶ 2 Plaintiffs Isabelle and Valerie are the daughters of defendant Bert J. Schoneberger ("Bert"). On or about January 1, 1991, Bert and his wife, defendant Linda Schoneberger ("Linda") created three irrevocable inter vi-

---

1. We cite the current version of applicable statutes where no revisions material to the decision have occurred.

2. Under Arizona Rule of Civil Appellate Procedure 13(a)(4) and (b) briefs on appeal are to contain a statement of facts with "appropriate references to the record." The parties' briefs in this appeal do not comply with this requirement.

This court has cautioned that we may disregard statements of fact that fail to comply with Rule 13. See, e.g., Lansford v. Harris, 174 Ariz. 413, 420 n. 1, 850 P.2d 126, 133 n. 1 (App.1992). We have elected to do so in this case and the facts set out in this decision are based on our own examination of the record.

vos trusts: the Schoneberger Trust, the Isabelle Schoneberger Trust ("Isabelle Trust"), and the Valerie Schoneberger Trust ("Valerie Trust"). At the time the Trusts were created, Isabelle and Valerie were eleven and ten years old respectively. Each daughter was the sole beneficiary of her namesake trust and both were beneficiaries of the Schoneberger Trust along with their step-sister Adrienne Lundgren.[3] Defendant J. Phillip Oelze, Sr. was the sole trustee of the Isabelle Trust and the Valerie Trust and a co-trustee with Defendant Anastasia Diane Michas of the Schoneberger Trust.

¶ 3 Each Trust document contained an arbitration provision. The provisions were identical, and provided as follows:

> Any dispute arising in connection with this Trust, including disputes between Trustee and any beneficiary or among Co–Trustees, shall be settled by the negotiation, mediation and arbitration provisions of that certain *LawForms Integrity Agreement (Uniform Agreement Establishing Procedures for Settling Disputes)* entered into by the parties prior to, concurrently with or subsequent to the execution of this Trust. In the event that the parties have not entered into a *LawForms Integrity Agreement (Uniform Agreement Establishing Procedures for Settling Disputes)*, then disputes in connection with this Trust shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Any decision rendered either in accordance with the *LawForms Integrity Agreement (Uniform Agreement Establishing Procedures for Settling Disputes)* or the rules of the American Arbitration Association shall be binding upon the parties as if the decision had been rendered by a court having proper jurisdiction.

¶ 4 The "LawForms Integrity Agreement for a Family" (the "Integrity Agreement"), referenced in the arbitration clauses, was signed by Bert, Linda and Oelze, but not by Michas. It sets out in minute detail dispute resolution procedures. These procedures were ordered in "progressive stages of increasing complexity and involvement," beginning with a "Stage One–Notice of Discomfort" and ending with a "Stage Six–Arbitration."

¶ 5 In 2002, Isabelle and Valerie filed separate, but similar, lawsuits against Bert, Linda, Oelze and Michas. Asserting claims of breach of trust, conversion and fraudulent concealment, Valerie and Isabelle accused the defendants of mismanaging and dissipating trust assets. Among other relief, each daughter demanded an accounting.

¶ 6 Defendants answered the complaints, denied the allegations of wrongdoing and alleged that Valerie's and Isabelle's claims were subject to mandatory arbitration. After the two cases were consolidated, defendants filed a motion to dismiss that was in substance a motion to compel arbitration under A.R.S. § 12–1501. Section 12–1501 provides:

> A written agreement to submit any existing controversy to arbitration or *a provision in a written contract to submit to arbitration any controversy thereafter arising* between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

(emphasis added).[4]

¶ 7 The defendants asserted the arbitration clauses in the Trust documents constituted "provisions in a written contract" requiring arbitration, and although Valerie and Isabelle were not signatories to the Trusts or the Integrity Agreement, they were nevertheless obligated to arbitrate as "third-party beneficiaries." Alternatively, they contended Valerie and Isabelle were equitably estopped from objecting to arbitration as they were affirmatively seeking benefits under the Trusts.

¶ 8 Valerie and Isabelle opposed defendants' motion to compel arbitration. They argued the arbitration provisions were unen-

---

3. Adrienne Lundgren is not a party to this action.

4. Section 12–1501 requires arbitration in two scenarios: first, when parties agree to arbitrate an existing controversy, and second, when parties contract to submit future disputes to arbitration. Only the second scenario is at issue here.

forceable because the Trusts were not contractual agreements. They also asserted that, as non-signatories to the Trust documents, they had never agreed to arbitrate their claims against the defendants.

¶ 9 The trial court denied the defendants' motion and held that Valerie and Isabelle were not bound by the arbitration provisions of the Trusts. The court ruled that arbitration is "contractual by nature" and that the nature of Valerie's and Isabelle's relationship with the defendants was not contractual "as the creation of a trust is concerned with a conveyance of the beneficial interest in the trust property."

¶ 10 This appeal followed.

## DISCUSSION

■ ¶ 11 Defendants argue here, as they did in the trial court, that the Trusts were written contracts subject to A.R.S. § 12–1501, and the only "real question" we must resolve is whether the "absence of the signature [sic] of [Valerie and Isabelle] permits them to escape enforcement of the arbitration provisions contained in the Trust agreement[s]." They answer this question with a vigorous "no," contending Valerie and Isabelle are bound by the arbitration provisions in the Trusts as third-party beneficiaries, or alternatively, are equitably estopped from avoiding arbitration.[5]

■ ¶ 12 Whether A.R.S. § 12–1501 applies in this situation and entitles the defendants to arbitration presents a question of law. Thus, our review is de novo. *Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, 375, ¶ 11, 35 P.3d 426, 429 (App.2001) (enforce-

ability of forum selection clause subject to de novo review).

¶ 13 In support of their third-party beneficiary argument, defendants assert Valerie and Isabelle cannot demand benefits under the Trusts without accepting all of their terms. In making this argument, defendants rely on this Court's decision in *Jeanes v. Arrow Insurance Company*, 16 Ariz.App. 589, 494 P.2d 1334 (1972). There, we held that a passenger, who was a third-party beneficiary of an insured's automobile liability policy, was bound by the arbitration provision in the policy even though she was not a party to the policy and had never personally agreed to submit to arbitration. We explained:

> The rights involved here were created by that contract [the policy], and in order to accept benefits under that contract she must accept and abide by the terms of the contract.

*Id.* at 592, 494 P.2d at 1337.

■ ¶ 14 Conceptually similar to their third-party beneficiary argument is defendants' equitable estoppel argument.[6] In the arbitration context, a nonsignatory to an agreement requiring arbitration may be estopped, that is, barred, from avoiding arbitration if that party is claiming or has received direct benefits from the contract. *See generally Int'l Paper Co.*, 206 F.3d at 418 (nonsignatory may not claim benefits from a contract and simultaneously avoid its burdens); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir.1999)(party will be estopped from denying obligation to arbitrate when it receives

---

5. Under well-established common law principles, a nonsignatory may be entitled to enforce, or be bound by, an arbitration provision in a contract executed by others. *E.g. Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir.2003)(recognizing various theories for binding nonsignatories to arbitration agreements under common law principles of contract and agency); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000) (same). Defendants rely on two of these theories here.

6. Under both theories, the third-party beneficiary and the party-to-be-estopped stand to benefit

from the existence of the contract containing the arbitration clause. Nevertheless, there are differences between the two doctrines. "Under third-party beneficiary theory, a court must look to the intentions of the parties at the time the contract was executed. Under the equitable estoppel theory, a court looks to the parties' conduct after the contract was executed. Thus, the snapshot [a court must examine] under equitable estoppel is much later in time than the snapshot for third-party beneficiary analysis." *Bridas S.A.P.I.C.*, 345 F.3d at 362, (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc*, 269 F.3d 187, 200 n. 7 (3rd Cir.2001)).

direct benefits from contract containing arbitration clause).

¶ 15 Thus, according to the defendants, whether pegged under a third-party beneficiary or equitable estoppel theory, the end result is the same—Valerie and Isabelle are obligated to arbitrate their claims. Defendants argue:

> [Valerie and Isabelle] now claim entitlement to money and benefits arising out of the Trust[s] allegedly misappropriated by Appellees ....
>
> [Valerie and Isabelle] are bound to the terms of the Trust[s] by equitable estoppel even though they are non-signatories. Stated simply, [Valerie and Isabelle] as ... third-party [beneficiaries] cannot pick and choose between paragraphs of the Trust agreement and seek to claim benefits under one paragraph and ignore the express arbitration requirements of a second paragraph.

¶ 16 Under either theory, however, defendants face a fundamental problem that defeats their demand for arbitration: section 12–1501 required defendants to prove the existence of "a provision in a *written contract* to submit to arbitration." (emphasis added). They failed to make this showing because, as a matter of law, the trusts at issue here were not contracts.

¶ 17 Arbitration is a creature of contract law. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *DuPont de Nemours and Co.*, 269 F.3d at 195. This is clear from the very wording of our arbitration statute. It requires arbitration when there is a "written agreement to submit any existing controversy to arbitration" or when there is a "provision in a written contract to submit to arbitration any controversy thereafter arising ...." Consistent with the wording of A.R.S. § 12–1501, Arizona courts have recognized that the fundamental prerequisite to arbitration is the existence of an actual agreement or contract to arbitrate. *See Broemmer v. Abortion Servs. of Phoenix*, 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (1992) (enforcability of agreement to arbitrate determined by contract law principles); *Jeanes*, 16 Ariz.App. at 592, 494

P.2d at 1337 ("rights here involved were 'created by that contract'"); *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.*, 165 Ariz. 25, 29–30, 795 P.2d 1308, 1312–1313 (App.1990) (public policy favoring arbitration presupposes existence of a valid agreement to arbitrate).

¶ 18 In another context, we have recognized that an inter vivos trust is not a contract. In *In re Naarden Trust*, 195 Ariz. 526, 990 P.2d 1085 (App.1999), a beneficiary of a living trust sued the trustee for an accounting and other relief arising out of the trustee's allegedly improper actions. The trial court dismissed the beneficiary's claims, and the trustee sought an award of attorneys' fees under A.R.S. § 12–341.01(A)(2003), which allows a court to award attorneys' fees to a prevailing party in a contract action, "express or implied." We affirmed the trial court's order denying fees, holding "the duties of a trustee stem from duties implied by law" and the relationships that arise out of a trust "are not contractual." *In Re Naarden Trust*, 195 Ariz. at 530, 990 P.2d at 1089.

¶ 19 In so holding, we discussed the distinctions between a trust and a contract. We explained that a beneficiary of a trust receives a beneficial interest in trust property while the beneficiary of a contract gains a personal claim against the promissor. Moreover, a fiduciary relationship exists between a trustee and a trust beneficiary while no such relationship generally exists between parties to a contract. *Id.* at 529, 990 P.2d at 1088. Drawing on the Restatement (Second) of Trusts (1959), we further noted:

> Moreover, the trustee's fiduciary duties "result from the trust relation, and are not based upon an agreement or contract, and are enforceable even though the trustee received no consideration." [*Id.* § 74 cmt. a]. *See also id.* § 169 cmt. c (the trustee's duties "are not contractual in nature"). This distinction is clarified in the RESTATEMENT's discussion of the beneficiary's remedies. "A trustee who fails to perform his duties ... is not liable to the beneficiary for breach of contract .... The creation of a trust is conceived of as a conveyance of the beneficial interest in the

trust property rather than as a contract." *Id.* § 197 cmt. b. Further, "[t]he trustee by accepting the trust and agreeing to perform his duties ... does not make a contract to perform the trust enforceable in an action at law." *Id.*

*In Re Naarden Trust,* 195 Ariz. at 529, 990 P.2d at 1088.

¶ 20 The legal distinctions between a trust and a contract are at the heart of why Valerie and Isabelle cannot be required to arbitrate their claims against the defendants. Arbitration rests on an exchange of promises. Parties to a contract may decide to exchange promises to substitute an arbitral for a judicial forum. Their agreement to do so may end up binding (or benefitting) non-signatories. In contrast, a trust does not rest on an exchange of promises. A trust merely requires a trustor to transfer a beneficial interest in property to a trustee who, under the trust instrument, relevant statutes and common law, holds that interest for the beneficiary. *Id.* at 530, 990 P.2d at 1089. The "undertaking" between trustor and trustee "does not stem from the premise of mutual assent to an exchange of promises" and "is not properly characterized as contractual." *Id.* That the defendants have referred to the Trusts interchangeably as "agreements" or "contracts" does not change their basic nature.

¶ 21 Glossing over the distinctions between a contract and a trust, the defendants rely on a number of cases where trust beneficiaries were required to arbitrate various disputes. *Smith Barney, Inc. v. Henry,* 775 So.2d 722 (Miss.2001), is illustrative of the cases they cite. There, the plaintiff's daughter opened two securities accounts with a brokerage firm and signed client agreements which required all controversies arising out of or relating to her accounts to be arbitrated. *Id.* at 724. When the daughter died, and pursuant to the terms of her will, the accounts were transferred to a testamentary trust with the plaintiff as beneficiary. *Id.* The trustee of the trust, aided by the alleged negligence of the brokerage firm, dissipated the accounts.

The plaintiff sued the firm which moved to enforce the arbitration provisions in the client agreements. *Id.* Applying the Federal Arbitration Act, the court found in favor of arbitration, holding the client agreements were by their terms binding upon the daughter's heirs and successors.[7] *Id.* at 727.

¶ 22 *Henry* and the other cases like it cited by defendants are distinguishable. The arbitration clauses enforced in those cases were contained in contracts the courts held bound the beneficiaries. The arbitration clauses did not purport to require trust beneficiaries to arbitrate internal trust disputes, which is what the defendants are seeking here.

¶ 23 The defendants also assert they are entitled to arbitration because under Arizona law a trustee may consent to arbitration. See A.R.S. § 14-7233(C)(19) (2003), which states that a trustee has power to settle a claim "by or against the trust by compromise, arbitration or otherwise ...." Although a trustee may enter into an arbitration agreement, A.R.S. § 14-7233(C) simply does not address whether a trust document containing an arbitration clause that purports to bind trust beneficiaries is a contract under A.R.S. § 12-1501.

¶ 24 Finally, relying on Restatement (Second) of Trusts § 37 (1959), defendants contend Valerie and Isabelle are required to arbitrate their claims because a trustor may create a trust requiring arbitration. This section of the Restatement generally provides that a trustor may reserve for himself or create powers in the trustee or others with respect to trust administration. We can see why a trustor creating an inter vivos trust might wish to require arbitration of disputes involving the trust. "The primary attraction of arbitration is an expeditious and inexpensive method of dispute resolution." *Rancho Pescado, Inc. v. Northwestern Mutual Life Ins. Co.,* 140 Ariz. 174, 182-83, 680 P.2d 1235, 1243-44 (App.1984). A trustor's right to reserve power over trust administration matters is not, however, absolute and a trustor of an inter vivos trust may not unilaterally strip trust beneficiaries of

---

7. The Federal Arbitration Act also requires the existence of a contract. Section 2 of the federal act provides that "[written arbitration agreements] shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2003).

their right to access the courts absent their agreement. "Although it is commonly said that the law favors arbitration, it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, ¶ 11, 977 P.2d 769, 773 (1999).

¶ 25 The trial court properly recognized the inter vivos trusts created by Bert and Linda were not contracts. Consequently, A.R.S. § 12–1501 was inapplicable and Valerie and Isabelle were not bound by the arbitration clauses in the Trust documents and Integrity Agreement.[8] The scope of our decision is narrow and limited to the enforceability of arbitration clauses against inter vivos trust beneficiaries. Nothing prohibits the parties from agreeing to arbitrate their existing disputes.

## CONCLUSION

¶ 26 For the foregoing reasons, we affirm the trial court's order denying what was in substance a motion to compel arbitration. We remand this matter to the trial court for further proceedings consistent with this decision.

GEMMILL and KESSLER, JJ., concurring.

---

8. Valerie and Isabelle have raised a number of alternative grounds for upholding the trial court's decision. Given our resolution of the defendants' third-party beneficiary and equitable estoppel arguments, we do not need to reach these issues.