**WOODHAVEN HOMES, INC. and Woodhaven Partners, Ltd., Appellants**

v.

**Kevin ALFORD and Gwendolyn Alford, Appellees.**

No. 05–03–01052–CV.

Court of Appeals of Texas, Dallas.

June 23, 2004.

Rehearing Overruled Sept. 23, 2004.

Louis J. Sandbote, Sandbote & Waggoner, P.C., Robert Gilbreath, Jenkins & Gilchrist, P.C., Dallas, for Appellant.

Robert W. Biederman, David M. Grossman, Stephen L. Hubbard, Hubbard & Biederman, L.L.P., Dallas, for Appellee.

Before Justices MORRIS, WRIGHT, and RICHTER.

## OPINION

Opinion by Justice WRIGHT.

Woodhaven Homes, Inc. (Woodhaven, Inc.) and Woodhaven Partners, Ltd.(Woodhaven Partners) (collectively Woodhaven) appeal the trial court's order denying their motion to compel arbitration. In a single point of error, Woodhaven contends the trial court abused its discretion in denying its motion to compel arbitration. We overrule Woodhaven's point of error and affirm the trial court's order.

### BACKGROUND

Woodhaven Partners is a limited partnership doing business under the name of "Woodhaven Homes." Woodhaven, Inc. is an independent contractor for Woodhaven Partners. The relationship between Woodhaven Partners and Woodhaven, Inc. is set forth in a management agreement. Pursuant to that agreement, Woodhaven,

Inc. serves as construction manager for Woodhaven Partners.

On March 26, 2000, Kevin and Gwendolyn Alford signed a four-page contract with Woodhaven Partners. The agreement was for the construction of a house at *314* Raintree Street in Sunnyvale, Texas. The contract contained an arbitration clause. On October 4, 2000, the Alfords entered into an agreement to purchase a house at a different address, *316* Raintree Street. They purchased the house at 316 Raintree Street on October 11, 2000. At the closing, Woodhaven, Inc. gave a limited warranty to the Alfords. The limited warranty attempted to disclaim warranties of habitability and good and workmanlike construction.

After moving into their new home, the Alfords found many defects. Woodhaven, Inc. failed to make repairs under the limited warranty. The Alfords sued Woodhaven, Inc. alleging causes of action arising under the limited warranty. They did not sue Woodhaven Partners because it is not a party to the limited warranty. Woodhaven Partners intervened in the lawsuit and Woodhaven then moved to compel arbitration. The trial court denied the motion and this interlocutory appeal followed.

## STANDARD OF REVIEW

■ We review a trial court's order denying a motion to compel arbitration under a "no evidence" standard. *Phillips v. ACS Mun. Brokers, Inc.*, 888 S.W.2d 872, 874 (Tex.App.-Dallas 1994, no writ). In reviewing a "no evidence" point, we consider only the evidence and inferences that tend to support the trial court's ruling and disregard all evidence and inferences to the contrary. *Id; Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 384 (Tex.App.-Houston [14th Dist.] 1993, writ denied). When, as in this case, the record contains no findings of

fact and conclusions of law, we affirm the trial court's judgment on any legal theory the evidence supports. *Phillips*, 888 S.W.2d at 874; *Hearthshire Braeswood*, 849 S.W.2d at 384.

## EXISTENCE OF AN ARBITRATION AGREEMENT

Woodhaven contends that the arbitration clause in the March 26 purchase agreement covers the Alfords' claims. The threshold inquiry is whether there exists an agreement to arbitrate a dispute regarding the property at 316 Raintree.

■ A party seeking to compel arbitration must show the existence of an arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding). Once a party makes the required showing, the trial court must compel arbitration. *Id.* Without an agreement to arbitrate, arbitration cannot be compelled. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex.1994) (orig. proceeding).

■ Woodhaven argues that the Alford's claims presume the existence of the March 26 purchase agreement and that is "sufficient to trigger the arbitration clause in that agreement." However, the Alfords' claims depend solely on the October 4 purchase agreement that pertains to the house they actually purchased at 316 Raintree and the limited warranty obtained on *that* property. Neither the October 4 purchase agreement nor the limited warranty contains an arbitration clause.

Although Woodhaven contends the October 4 contract is an addendum to the March 26 contract, the record does not support that contention. The October contract notes that the Alfords paid $2000 in earnest money on March 26, 2000. This notation, however, does not constitute a

reference to an addendum to the March 26 contract.

■ Woodhaven also asserts that the March and October purchase agreements must be read together because they involve the same transaction—the sale of *a* home by Woodhaven Partners and the purchase of *a* home by the Alfords. As a general rule, multiple documents pertaining to the same transaction will be construed together as one contract. *Jones v. Kelley,* 614 S.W.2d 95, 98 (Tex.1981). However, documents cannot be considered together unless they reference each other or they refer to the *same* subject matter. *Douglass v. Texas–Canadian Oil Corp.,* 141 Tex. 506, 174 S.W.2d 730, 731 (1943).

■ The cases relied upon by Woodhaven to support its argument that the two agreements involve the same transaction are readily distinguishable. In *AutoNation USA Corp. v. Leroy,* 105 S.W.3d 190 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding), Leroy signed both an agreement to purchase a car and a separate financing agreement. Only the purchase agreement contained an arbitration clause. Leroy alleged that AutoNation charged a documentary fee higher than allowed by law. The documentary fee was included in the financing agreement. In holding that the arbitration clause covered Leroy's claims, the court held that the purchase and finance agreements were to be read together because the documentary fee was provided for and itemized in the purchase agreement. *Id.* at 197. By contrast, the Alfords' lawsuit concerns property, at a different address, that is not mentioned in the contract containing the arbitration clause. In another case, the supreme court construes together several documents pertaining to the settlement of the *same* controversy. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth,* 22 S.W.3d 831, 836–40 (Tex.2000). *City of Fort Worth* is inapplicable to this case because the March and October contracts do not involve the purchase of the *same* house. In *Jones,* the buyers sued for specific performance to convey real estate. *Jones* 614 S.W.2d at 97. The parties executed four documents for the sole purpose of conveying all of the seller's land. In holding that the documents were to be read together, the supreme court noted that the execution of the four documents was the means through which the seller conveyed all of his land to the buyers. *Id.* at 99. Unlike the facts in *Jones,* the two separate documents in this case involve two different pieces of property with the Alfords intending to purchase and actually purchasing only one of those two properties.

■ Woodhaven, Inc. also contends that it can compel arbitration under the doctrine of equitable estoppel. We disagree. Equitable estoppel allows a nonsignatory to compel arbitration in two circumstances. The first circumstance is where the signatory to a contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both a nonsignatory and a signatory to the contract. *McMillan v. Computer Translation Systems & Support, Inc.,* 66 S.W.3d 477, 482 (Tex.App.-Dallas 2001, no pet.), citing, *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527 (5th Cir.2000); *see also, In re EGL Eagle Global Logistics, L.P.,* 89 S.W.3d 761, 765 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding) (new employer forced to arbitrate under agreement between employee and its former employer where former employer alleged claims of civil conspiracy and theft of trade secrets against both the signatory and nonsignatory). The second circumstance is where the nature of the underlying claims requires the signatory to rely on the agreement containing the arbitration clause in asserting its claims

against the nonsignatory. *McMillan,* 66 S.W.3d at 482; *see also, Carlin v. 3V, Inc.,* 928 S.W.2d 291, 295 (Tex.App.-Houston [14th Dist.] 1996, no writ) (nonsignatory bound by arbitration agreement contained in contract later assigned to the appellee where the appellee "based its entire case on the rights it acquired from the [contract] and would have no case if it did not exist.").

We conclude that neither of the above circumstances applies in this case. The Alfords alleged claims against only a nonsignatory, Woodhaven, Inc. All of the Alfords' causes of action against Woodhaven, Inc. pertain to the limited warranty. The sole signatories to that warranty are Woodhaven, Inc. and the Alfords.

The March 26 purchase agreement containing the arbitration clause is for a house which the Alfords did not purchase. The Alfords' claims pertain to the house they actually purchased. More specifically, their claims center on the limited warranty from Woodhaven, Inc. obtained by the Alfords at closing. Contrary to Woodhaven's assertion, the Alfords do not and need not rely on the terms of the March 26 purchase agreement in asserting its claims against Woodhaven, Inc. Accordingly, Woodhaven cannot rely on equitable estoppel to enforce the arbitration clause in the March 26 purchase agreement.

We conclude there is no enforceable arbitration agreement. Accordingly, the trial court properly denied the motion to compel arbitration. *See Freis,* 877 S.W.2d at 284; *McMillan,* 66 S.W.3d at 482. We overrule Woodhaven, Inc.'s and Woodhaven Partners' point of error. We affirm the trial court's order.