Hal RACHAL, Jr., Appellant,

v.

John W. REITZ, Appellee.

No. 05–09–01422–CV.

Court of Appeals of Texas, Dallas.

July 22, 2011.

B. Prater Monning, III, Monning & Wynne, L.L.P., Dallas, TX, for Appellant.

Paul R. Leake, Paul R. Leake & Associates, Forney, TX, for Appellee.

Before the Court En Banc.[1]

## OPINION

Opinion By Justice LANG–MIERS.

This is an interlocutory appeal from a trial court's order denying a motion to compel arbitration and stay litigation. For the following reasons, we affirm the trial court's order.

### FACTS

Appellee John W. Reitz is a beneficiary of a trust established by his father, A.F. Reitz. When A.F. Reitz established the trust, he appointed himself as the sole initial trustee and appellant Hal Rachal, Jr., his attorney, as successor trustee. After A.F. Reitz died, Rachal became the trustee. John Reitz sued Rachal, individually and as successor trustee, alleging that Rachal failed to provide an accounting on behalf of the trust as required by statute and breached his fiduciary duty by failing to account and by concealing his systematic looting of the trust for his personal gain, and asserting that Rachal should be removed as trustee. Rachal filed a motion to compel arbitration and to stay litigation arguing that Reitz must arbitrate his claims against Rachal pursuant to a provision contained in the trust document. The trial court denied the motion to compel and to stay. In this interlocutory appeal, Rachal argues that he established a valid arbitration agreement, that the claims fall within the scope of the agreement, and that there is no evidence to support the trial court's order denying his motion.[2]

### STANDARD OF REVIEW

■■■ We review an interlocutory order denying a motion to compel arbitration for an abuse of discretion. *See Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex.App.-Dallas 2010, no pet.). Under this standard of review, we apply a no-evidence standard to the trial court's factual determinations and a de novo standard to its legal determinations. *Id.; In re Trammell*, 246 S.W.3d 815, 820 (Tex.App.-Dallas 2008, no pet.). When reviewing the trial court's factual determinations under the no-evidence

---

1. Justice Moseley did not participate.

2. While this interlocutory appeal was pending, the case continued to move forward in the trial court because neither party asked us to stay the trial court proceedings. The trial court granted a motion for sanctions against Rachal and struck Rachal's pleadings. Rachal filed an interlocutory appeal of that order, which we dismissed for want of jurisdiction. *See In re The A.F. Reitz Trust*, No. 05–11–00153–CV, 2011 WL 754348, at *1 (Tex. App.-Dallas Mar. 4, 2011, no pet.) (mem. op.).

standard, we must credit the favorable evidence if a reasonable fact-finder could and disregard the contrary evidence unless a reasonable fact-finder could not. *Trammell,* 246 S.W.3d at 820. When facts relevant to the arbitration issue are not disputed and we are presented only with issues of law, we review the trial court's order de novo. *Id.*

■ When no findings of fact and conclusions of law are filed, we must affirm the trial court's order if any legal theory supports it. *See Woodhaven Homes, Inc. v. Alford,* 143 S.W.3d 202, 204 (Tex.App.-Dallas 2004, no pet.); *Auto Nation USA Corp. v. Mohamed,* No. 01–03–00388–CV, 2004 WL 858764, at *2 (Tex.App.-Houston [1st Dist.] Apr. 22, 2004, no pet.) (mem. op.); *Phillips v. ACS Mun. Brokers, Inc.,* 888 S.W.2d 872, 875 (Tex.App.-Dallas, 1994, no pet.).

### ARBITRATION–APPLICABLE LAW

■ Rachal moved to compel arbitration and to stay litigation under the Texas General Arbitration Act, and the parties do not dispute that Texas law applies to this case. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (West 2005). It is a foundational principle that a party cannot be compelled to arbitrate a dispute when the party has not agreed to do so. *Roe v. Ladymon,* 318 S.W.3d 502, 510 (Tex.App.-Dallas 2010, no pet.); *Bates v. MTH Homes–Tex., L.P.,* 177 S.W.3d 419, 422 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Under the TAA, the party seeking to compel arbitration must first show the existence of an agreement to arbitrate. TEX. CIV. PRAC. & REM.CODE § 171.021(a); *Alford,* 143 S.W.3d at 204. The agreement must be clear that the parties intended to submit the dispute to arbitration. *Bates,* 177 S.W.3d at 422. When deciding whether the movant met its burden to establish a valid agreement to arbitrate, we apply

standard contract principles and do not resolve doubts or indulge a presumption in favor of arbitration. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003). The party attempting to compel arbitration must show that the arbitration agreement meets all requisite contract elements. *Id.* at 228; *see Gables Cent. Constr., Inc. v. Atrium Cos., Inc.,* No. 05–07–00438–CV, 2009 WL 824732, at *2 (Tex.App.-Dallas Mar. 31, 2009, pet. abated) (mem. op.) (stating requisite contract elements). If the trial court finds that a valid arbitration agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *J.M. Davidson,* 128 S.W.3d at 227; *In re Oakwood Mobile Homes,* 987 S.W.2d 571, 573 (Tex.1999), *abrogated in part by In re Halliburton Co.,* 80 S.W.3d 566 (Tex.2002); *Weekley Homes, Inc. v. Jennings,* 936 S.W.2d 16, 18–19 (Tex.App.-San Antonio 1996, writ denied).

### THE RECORD

It is undisputed that the trust document contained the following provision:

> *Arbitration.* Despite anything herein to the contrary, I intend that as to any dispute of any kind involving this Trust or any of the parties or persons concerned herewith (e.g. beneficiaries, Trustees), arbitration as provided herein shall be the sole and exclusive remedy....

Rachal's motion to compel arbitration and for stay of litigation stated in its entirety:

#### I.

All of the claims asserted by Plaintiff arise under and relate to the A.F. Reitz Trust. A copy of the A.F. Reitz Trust is attached to Plaintiff's Original Petition and has been incorporated by Plaintiff into his First Amended Petition.

#### II.

The A.F. Reitz Trust provides that with respect to any dispute of any kind involving the Trust arbitration "shall be the sole and exclusive remedy, and no legal proceedings shall be allowed . . .:"

### III.

Plaintiff filed this action in this Court contrary to and in violation of the terms of the Trust and has failed and refused to arbitrate. Pursuant to Chapter 171 of the Texas Civil Practice & Remedies Code, this Court must order the parties to arbitrate all disputes arising under the A.F. Reitz Trust and stay all proceedings in this case.

Wherefore Defendant prays that the Court order Plaintiff to arbitrate this dispute, stay all proceedings in this action, and that if Plaintiff fails within ten days to initiate arbitration in accordance with the terms and provisions of the A.F. Reitz Trust that this action be dismissed at Plaintiff's cost.

Rachal's argument to the court below, in its entirety, was:

I have advised the Court that I have filed a Motion to Stay this case. I incorporated a copy of the trust agreement that is attached to the plaintiff's pleadings.

The trust agreement includes an agreement providing that all disputes would be subject to arbitration. I believe the court is compelled to stay this case.

I anticipate what the Court's ruling might be,[3] but nonetheless, I have agreed to that reserving my rights to the motion to stay. I request that the court rule on my request for a stay before we enter an injunction. The position we take is that once the motion to

stay has been filed, and it is established that there is an arbitration agreement, the Court, under the State Act, must stay the litigation.

Based upon this record, Rachal asks us to reverse the trial court's order denying his motion and direct the trial court to grant the motion.

### RACHAL DID NOT PROVE THAT THERE IS AN AGREEMENT TO ARBITRATE

Rachal's initial burden was to prove the existence of a valid agreement to arbitrate between Rachal and Reitz. TEX. CIV. PRAC. & REM.CODE § 171.021(a); *Alford,* 143 S.W.3d at 204. We conclude that Rachal did not fulfill his burden.

As we have stated, we determine the existence of an arbitration agreement based on Texas contract law. *J.M. Davidson,* 128 S.W.3d at 227. The elements required for the formation of a valid contract are (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding on the parties to the agreement. *Gables Cent. Constr.,* 2009 WL 824732, at *2. Consideration is a fundamental element of every valid contract. *Id.*

It is undisputed that neither Rachal nor Reitz signed the trust document as parties to the trust. Instead, the sole evidence presented to support the motion—the trust—expresses the *settlor's intent* that disputes involving the trust be resolved by arbitration. Rachal did not establish how the settlor's expression of intent satisfied all of the required elements of a contract or how this expression of the settlor's in-

---

**3.** The same trial court had already denied a similar motion in *Rachal v. Letkiewicz,* No. 05–09–01396–CV, 2011 WL 2937440 (Tex. App.-Dallas July 22, 2011, no pet. h.), also decided today.

tent transformed the trust provision into an agreement to arbitrate between Rachal and Reitz. *See J.M. Davidson,* 128 S.W.3d at 227; *Gables Cent. Constr.,* 2009 WL 824732, at *2; *Mohamed v. Auto Nation USA Corp.,* 89 S.W.3d 830, 836 (Tex. App.-Houston [1st Dist.] 2002, no pet.); *see also ACS Mun. Brokers,* 888 S.W.2d at 875 (stating that "the Texas Act requires arbitration only between the parties to an agreement to arbitrate. The Texas Act focuses on the 'parties' to an agreement, not the 'transaction.' The Texas Act contemplates that parties enter a specific, mutual agreement to arbitrate before a court will force a party to relinquish its judicial rights and remedies").

■ Additionally, whether a provision stating the settlor's intent that disputes involving the trust be resolved by arbitration is enforceable as in a contract is an issue of first impression in Texas. Indeed, only two jurisdictions in the country have considered a similar issue. Both have concluded that a trust is not a contract and that a beneficiary of a trust cannot be compelled to arbitrate disputes arising under the trust.

The issue was first considered by the Arizona Court of Appeals in *Schoneberger v. Oelze,* 208 Ariz. 591, 96 P.3d 1078 (2004), *superseded by statute,* 2008 Ariz. Sess. Laws, ch. 247, § 16 (2d Reg. Sess.) (current version at ARIZ.REV.STAT. ANN. § 14–10205 (West, Westlaw through 1st & 2d Special Sess. 2011)). The trust documents in *Schoneberger* contained a provision stating, "Any dispute arising in connection with this Trust, . . . shall be settled by . . . arbitration. . . ." *Id.* at 1080. The beneficiaries of the trusts sued the settlors and trustees of the trusts, accusing them of mismanaging and dissipating trust assets. The defendants argued that the beneficiaries were bound by the arbitration provisions in the trust documents as third-party

beneficiaries. *Id.* at 1081. Alternatively, the defendants argued that the beneficiaries were equitably estopped from objecting to arbitration because they were affirmatively seeking benefits under the trusts. *Id.* The beneficiaries argued that the trusts were not contractual agreements, they had never agreed to arbitrate their claims, and they were nonsignatories to the trusts. *Id.* at 1080–81. The trial court agreed with the beneficiaries, concluding that their "relationship with the defendants was not contractual 'as the creation of a trust is concerned with a conveyance of the beneficial interest in the trust property.'" *Id.* at 1081.

The appellate court examined the defendants' third-party beneficiary argument and concluded that they had not met their burden of showing a contract to arbitrate. *Id.* The court explained that "[a]rbitration is a creature of contract law" and that "'the duties of a trustee stem from duties implied by law' and the relationships that arise out of a trust 'are not contractual.'" *Id.* at 1082 (quoting *In re Naarden Trust,* 195 Ariz. 526, 990 P.2d 1085, 1088–89 (1999) (distinguishing a trust from a contract)). It further explained that a trustee and a trust beneficiary have a fiduciary relationship "while no such relationship generally exists between parties to a contract." *Id.* And it noted distinctions between a trust and a contract and why the trust beneficiaries could not be compelled to arbitrate their claims:

> Arbitration rests on an exchange of promises. Parties to a contract may decide to exchange promises to substitute an arbitral for a judicial forum. Their agreement to do so may end up binding (or benefitting) nonsignatories. In contrast, a trust does not rest on an exchange of promises. A trust merely requires a trustor to transfer a beneficial interest in property to a trustee

who, under the trust instrument, relevant statutes and common law, holds that interest for the beneficiary. The "undertaking" between trustor and trustee "does not stem from the premise of mutual assent to an exchange of promises" and "is not properly characterized as contractual." That the defendants have referred to the Trusts interchangeably as "agreements" or "contracts" does not change their basic nature.

*Id.* at 1083 (quoting *Naarden,* 990 P.2d at 1089) (internal citations omitted).[4]

California's Second Court of Appeal has also determined, as an issue of first impression in that state, that a beneficiary of a trust who did not agree to arbitrate disputes arising under the trust may not be compelled to arbitrate because a trust is not a contract. *Diaz v. Bukey,* 195 Cal.App.4th 315, 125 Cal.Rptr.3d 610, 611–13, 615 (2011). The *Diaz* court relied on the analysis in *Schoneberger* and the distinctions between a trust and a contract made in that case. *See id.* at 614–15. Also relying on the analysis in *Schoneberger,* the District of Columbia Court of Appeals concluded that an arbitration provision in a will was not enforceable because a will is not a contract. *In re Calomiris,* 894 A.2d 408, 409 (D.C.2006).

Texas, like Arizona and California, recognizes distinctions between the formation of a contract and the creation of a trust. As set out above, for a valid contract to exist in Texas, there must be an offer, an acceptance, a meeting of minds between the parties, each party's consent to the terms of the contract, and execution and delivery of the contract with the intent that it be mutual and binding on the parties to the agreement. *Gables Cent. Constr.,* 2009 WL 824732, at *2. Further, consideration "is also a fundamental element of every valid contract." *Id.*

 A trust, on the other hand, is a method used to transfer property. *Sarah v. Primarily Primates, Inc.,* 255 S.W.3d 132, 145 (Tex.App.-San Antonio 2008, pet. denied); *Faulkner v. Bost,* 137 S.W.3d 254, 258 (Tex.App.-Tyler 2004, no pet.). The term "trust" refers to "the *fiduciary relationship* governing the trustee with respect to trust property." *Huie v. DeShazo,* 922 S.W.2d 920, 926 (Tex.1996); *see also Ray Malooly Trust v. Juhl,* 186 S.W.3d 568, 570 (Tex.2006) (per curiam). A trust can be created without the beneficiary's participation. *See* Tex. Prop.Code Ann. § 112.001 (West 2007) (setting out methods for creating trust). Although it is necessary for the settlor to manifest an intention to create the trust, it is not necessary for the settlor to receive consideration for doing so. *See id.* §§ 112.002–.003. Further, as in this case, a trust can be created with the same party acting as the settlor and the trustee. *See id.* § 112.008(c).

Arbitration is a creature of contract law. However, this type of trust is not a contract. *See Schoneberger,* 96 P.3d at 1083; *Diaz,* 125 Cal.Rptr.3d at 611–13, 615. Accordingly, the arbitration provision in the trust document at issue in this case is not enforceable as an agreement to arbitrate. It is for the Texas Legislature to decide whether and to what extent the settlor of this type of a trust should have the power to bind the beneficiaries of the trust to

---

4. The Arizona legislature subsequently passed a statute authorizing trusts to include arbitration provisions which may be enforced when reasonable. *See* Ariz.Rev.Stat. Ann. § 14–10205 (West, Westlaw through 1st & 2d Special Sess. 2011) (stating "[a] trust instrument may provide mandatory, exclusive and reasonable procedures to resolve issues between the trustee and interested persons or among interested persons with regard to the administration or distribution of the trust").

arbitrate any future dispute arising from the trust. We conclude that, on this record, the trial court could have denied the motion to compel and to stay because Rachal did not establish the existence of an agreement to arbitrate pursuant to the TAA.

CONCLUSION

We affirm the trial court's order.

MURPHY, J. dissenting, joined by JJ. MORRIS, O'NEILL, and RICHTER.

Dissenting Opinion By Justice MURPHY.

The majority concludes that Hal Rachal, Jr., as the successor trustee to the written trust agreement established by John W. Reitz's father, cannot enforce that agreement's mandatory arbitration provision against Reitz. The majority reasons that the trust agreement is not a contract and does not meet the requirements of Texas contract law. Because I would conclude Rachal met his burden to show an agreement to arbitrate the parties' dispute under the Texas General Arbitration Act, I respectfully dissent. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–.098 (West 2011).

**Agreement to Arbitrate**

On an application of a party showing both an agreement to arbitrate and the opposing party's refusal, the trial court has no discretion but to compel arbitration. *Id.* § 171.021(a). If the party opposing a motion denies the existence of the agreement, the court must summarily determine the issue. *Id.* § 171.021(b).

An agreement containing an arbitration clause, signed by the parties, and attached to a pleading, establishes the existence of an arbitration agreement as a matter of law when the parties present no evidence

disputing their signatures. *See In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 675–76 (Tex.2006) (orig. proceeding). Texas law also recognizes a party may be bound by an arbitration agreement even in the absence of a signature. *Id.* at 677 (non-signatory could enforce arbitration agreement that inured to its benefit); *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 129 (Tex.2005) (orig. proceeding).

To meet his burden of showing an agreement to arbitrate, Rachal relies on the copy of the trust agreement attached to Reitz's original petition, which Rachal incorporated into his motion to compel arbitration. Rachal contends the terms of the trust agreement, together with Reitz's pleadings, establish his right to arbitrate the dispute. Reitz never denied the existence of the trust agreement or, at the hearing before the probate court, stated any opposition to Rachal's motion. He did not file a written response and did not seek leave to do so. His counsel did not speak at all.

While it is undisputed that neither party signed the trust agreement, both parties are expressly named, Rachal as a successor trustee and Reitz as a beneficiary. Reitz alleged the basis for his standing in the underlying suit as "an interested party and beneficiary of the Trust." *See Perfect Union Lodge No. 10 v. Interfirst Bank of San Antonio, N.A.,* 748 S.W.2d 218, 220 (Tex.1988) (trust beneficiaries hold equitable title to trust property). Reitz also sued Rachal as the current successor trustee and seeks in his petition "to have the Court remove or disregard the provisions of article 10(A)(3) of the Trust giving [Rachal] the power to designate his successor and appoint any assistant or associate as successor Trustee."

As a principle of trust construction, courts interpret trust documents as they would contracts. *Lesikar v. Moon,* 237

S.W.3d 361, 366 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). A court's main concern in construing a trust instrument is to determine the settlor's intent "with the view of effectuating it." *Smith v. Moore,* 425 S.W.2d 856, 862 (Tex.App.-Houston [1st Dist.] 1968), *modified,* 443 S.W.2d 552 (Tex.1969). That construction is a question of law for the court when there is no ambiguity in the trust agreement. *Lesikar,* 237 S.W.3d at 367.

Article 15 of the trust agreement here expresses Reitz's father's intent to bind all parties, including himself, beneficiaries, and those accepting any responsibilities under the agreement. Under the heading *"AGREEMENT BINDING,"* the document provides:

> This agreement shall extend to and be binding upon the Grantor, Trustees, and beneficiaries hereto and on their respective heirs, executors, administrators, legal representatives, and successors.

Reitz does not argue he is not legally bound by this trust he seeks to enforce as a beneficiary and, absent that agreement, Reitz would have no claims as beneficiary against Rachal as the trustee. *See Merrill Lynch, Pierce, Fenner & Smith v. Eddings,* 838 S.W.2d 874, 880 (Tex.App.-Waco 1992, writ denied) (party opposing arbitration would have no claims but for agreement containing arbitration provision); *see also Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 307 (Tex.2006) ("When a party's right to recover and its damages depend on the agreement containing the arbitration provision, the party is relying on the agreement for its claims."); *cf. Aberg v. First Nat'l Bank in Dallas,* 450 S.W.2d 403, 407 (Tex.Civ.App.-Dallas 1970, writ ref'd n.r.e.) (a beneficiary of a trust who has not, by words or conduct, manifested his acceptance of the beneficial interest, may disclaim such interest). Reitz also

provides no basis for excluding the arbitration provision from the agreement.

In concluding the trust agreement does not meet the requirements of section 171.021(a) of the TAA, the majority directs its analysis solely to the issue of whether an arbitration agreement in a trust meets all requirements for creation of a contract under Texas law. While I would agree our courts have continued to describe arbitration agreements as "a matter of contract" law, *see, e.g., Nafta Traders, Inc. v. Quinn,* 339 S.W.3d 84 (Tex.2011), they have not addressed the question of whether section 171.001 is applicable to a trust agreement.

Section 171.001 requires only "a written *agreement* to arbitrate." Tex. Civ. Prac. & Rem.Code § 171.001(a) (emphasis added). It is rudimentary that an "agreement" is broader than a "contract," and an agreement may lack an essential element of a contract. *See Wiley v. Bertelsen,* 770 S.W.2d 878, 882 (Tex.App.-Texarkana 1989, no writ); *see also Connors v. Huey,* No. 05–98–01139–CV, 2001 WL 549126, at *3 (Tex.App.-Dallas May 24, 2001, no pet.) (not designated for publication); Black's Law Dictionary 74 (8th ed. 2004) (defining "agreement" and comment that although the term is synonymous to contract, "not every agreement is a contract"); *cf.* Tex.R. Civ. P. 11 (agreements between attorneys or parties to be in writing to be enforced). And as described, a fundamental principle of trust law requires that we apply contract rules of interpretation and enforce trust agreements based on the settlor's intent. *Lesikar,* 237 S.W.3d at 366; *Smith,* 425 S.W.2d at 862.

Foreign courts that have concluded a trust agreement arbitration provision is unenforceable have done so in the context of express statutory requirements for an "arbitration contract." *See Diaz v. Bukey,* 125 Cal.Rptr.3d 610, 611–13, 615 (Cal.Ct. App.2011) ("The Trust does not meet the

statutory definition of a contract because there is no evidence that the beneficiaries gave either their consent or consideration to achieve the status of beneficiary."); *Schoneberger v. Oelze,* 208 Ariz. 591, 96 P.3d 1078, 1082 (Ariz.Ct.App.2004) ("defendants face a fundamental problem that defeats their demand for arbitration: section 12–1501 required defendants to prove the existence of 'a provision in a *written contract* to submit to arbitration.' "), *superseded by statute,* 2008 Ariz. Sess. Laws, ch. 247, § 16 (2d Reg.Sess.) (current version at ARIZ.REV.STAT. ANN. § 14–10205 (West, Westlaw through Feb. 2011 Sess.)). Conversely, section 171 does not require a contract.[1]

Under the TAA, a court must order the parties to arbitrate on application of a party showing an agreement to arbitrate and the opposing party's refusal. *Id.* § 171.021(a). It is only "if" the opponent denies the existence of the agreement, the court summarily determines the issue. *Id.* § 171.021(b); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003). And while a court may require the applicant seeking to compel arbitration to attach a copy of the agreement and define the issue subject to arbitration, a court may not find an application inadequate because of the absence of those requirements unless it requires the applicant to meet the requirements of the court and grants a ten-day period to comply. TEX. CIV. PRAC. & REM. CODE ANN. § 171.085(b). Here, Reitz did not deny the existence of an agreement to arbitrate. While we do not know the court's basis for overruling Rachal's motion, the record is clear that the trial court did not give Rachal time or opportunity to

meet any perceived deficiencies in the application.

It would be helpful if the Texas Legislature added a provision to the TAA confirming that an arbitration provision in a trust agreement is enforceable pursuant to a settlor's intent. *See Smith,* 425 S.W.2d at 862 (courts construe trust agreement to effect settlor's intent). I disagree with the majority that we must wait for such legislation when, as here, the settlor has emphasized his unambiguous intent that Rachal as the successor trustee and Reitz as one of his two named beneficiaries are bound by the terms of his trust agreement, including the mandatory arbitration provision. I also would conclude the arbitration provision is an "agreement" that meets the requirements of section 171.021(a)(1). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.021(a)(1).

### Scope of the Arbitration Agreement

In seeking to compel arbitration, Rachal also had the burden of showing Reitz's claims are within the scope of the arbitration provision. *See J.M. Davidson,* 128 S.W.3d at 227. Courts are directed to focus on factual allegations rather than the legal causes of action asserted. *See In re FirstMerit Bank,* 52 S.W.3d 749, 754 (Tex. 2001). Any doubts about the factual scope of the arbitration clause must be resolved in favor of coverage. *See id.* Generally, if the facts alleged touch, have a significant relationship, are inextricably enmeshed, or are factually intertwined with the subject of the arbitration provision, the claim will be arbitrable. *See Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494, 498 (Tex.App.-San Antonio 2000, orig. proceeding). The na-

---

1. Additionally, those courts have been criticized for their "ill-advised distinction" between "a trust or will versus a contract" and "misguided logic." *See* Michael P. Bruyere & Meghan D. Marino, *Mandatory Arbitration* *Provisions: A Powerful Tool to Prevent Contentions and Costly Trust Litigation, But Are They Enforceable?,* 42 REAL PROP. PROB. & TR. J. 351, 360–62 (2007).

ture of the parties' relationship is also critical. *See In re Great W. Drilling, Ltd.,* 211 S.W.3d 828, 838 (Tex.App.-Eastland 2006, orig. proceeding). If the parties' "sole relationship is established and governed by an agreement with an arbitration provision, their disputes are more likely to fall within the scope of the arbitration provision." *Id.*

The arbitration provision here requires arbitration of "any dispute of any kind involving this Trust or any of the parties or persons concerned herewith (e.g., beneficiaries, Trustees)." The scope is broad, and the parties' relationship and related duties and responsibilities are dependent on the trust agreement. Reitz's factual allegations are also substantially related to that underlying agreement. The very core of Reitz's lawsuit is Rachal's alleged failure to perform his duties as trustee and alleged misdeeds in managing trust assets. In an attempt to avoid the broad scope of the arbitration provision squarely encompassing Reitz's factual allegations, he argues Rachal's alleged criminal acts of looting trust funds for his personal gain fall outside the scope of the agreement. I would disagree.

Reitz cites no authority that would exclude otherwise arbitrable claims because they may also have criminal law consequences. The applicable legal standard instead requires us to focus on the factual allegations, not legal claims. *See In re FirstMerit Bank,* 52 S.W.3d at 754. Regardless of how Reitz pleads or characterizes his legal claims, the underlying factual allegations rest on the existence of the trust agreement and the parties' relationship established and governed by that agreement. I would conclude Reitz's claims are within the scope of the arbitration agreement and therefore would sustain Rachal's sole issue.

**Conclusion**

For these reasons, I would conclude the probate court erred when it overruled Rachal's motion to compel arbitration and stay the underlying litigation. Accordingly, I would reverse the probate court's order and remand this case to the probate court for further proceedings.