UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-30012
_____


BATON ROUGE OIL AND CHEMICAL WORKERS UNION,

Plaintiff-Appellee,

v.


EXXONMOBIL CORPORATION, Previously doing business as Exxon
Company, USA, a division of Exxon Corporation and Exxon Chemicals
Americas, an Operating Division of Exxon Chemical Company, a
Division of Exxon Corporation, Baton Rouge, Louisiana,
formerly known as Exxon Company USA,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Middle District of Louisiana
_____
April 23, 2002


Before DeMOSS and BENAVIDES, Circuit Judges.[*]

DeMOSS, Circuit Judge:

This is an appeal of an order compelling arbitration of a
grievance filed pursuant to a collective bargaining agreement
(CBA).  Because we conclude that the CBA at issue does not require

_____

[*]Judge Higginbotham heard oral argument in this case but had
to recuse.  Accordingly the case is being decided by a quorum.  See
28 U.S.C. §46(d).

the defendant, ExxonMobil Corporation, to arbitrate grievances protesting the discharge of probationary employees, we reverse the district court's order compelling arbitration.

## I.

ExxonMobil and Baton Rouge Oil and Chemical Workers Union signed a CBA covering certain employees at ExxonMobil's Baton Rouge facilities. The CBA at issue, which extended from February 1999 through March 2002, governed the terms and conditions of employment for bargaining unit members.

ExxonMobil hired Michael Melancon as a special laboratory technician apprentice on March 16, 1998, and discharged him on February 11, 1999. It is undisputed that he was a member of the bargaining unit and that he was a probationary employee for purposes of the CBA. However, the parties do dispute the reason for his termination. The company claims that he was discharged for incompetence, while Melancon and the Union claim that he was discharged because his participation in a National Guard exercise caused him to lose critical training.[2]

---

[2] Following his dismissal, Melancon filed a complaint with the Department of Labor's Veteran's Employment and Training Service (VETA) under the Uniformed Services Employment Rights Act of 1994, 38 U.S.C. § 4301. However, Melancon's allegation that his missed on-the-job training contributed to his termination was rejected by VETA, which subsequently notified ExxonMobil that it had concluded its investigation and closed its file after finding no violation.

Melancon filed a grievance with ExxonMobil complaining about his discharge. After the Company rejected his claim and refused to arbitrate, the Union brought this action under the Labor Management Relations Act, 29 U.S.C. § 185(a), seeking to compel arbitration. Both parties moved for summary judgment on the arbitrability of this grievance. The district court granted the Union's motion and entered an order compelling arbitration. ExxonMobil appeals here.

## II.

The sole issue presented is whether the CBA requires ExxonMobil to arbitrate the reasonableness of a probationary employee's discharge. The relevant provisions of the CBA provide:

> Article 144    Unlawful Provision is Invalid:
> If this Agreement requires a party to do anything which is prohibited by law, the requirement is invalid. In this connection, law means federal, state or municipal law or a rule, regulation or order issued by a competent government authority or regulative or administrative body.
>
> Article 251    What grievances are Arbitrable:
> An arbitrable grievance is a good faith claim by one party that the other party has violated a written provision of this agreement. If the claim is disputed, the issue is either
>        (1) The interpretation of the provision, or
>        (2) The facts, or both.
>
> Article 1121   General Discipline:
> (a) The Company may discipline an employee only for cause.
> (b) Even though an employee does not commit a posted offense, his conduct or work performance may still be cause for discipline. However, the Company may not discipline him without giving him advance notice and,

3

where practicable, an opportunity to correct the situation.

Article 1122  Penalty:
When the Company disciplines an employee, it may impose any penalty which it deems appropriate.  But there is this exception when the Company disciplines an employee other than a probationary employee: If the penalty imposed by the Company is discharge, the decision making leave, or suspension in excess of five work-days, and a claim is made that it is not reasonable, then the reasonableness of the penalty is an arbitrable grievance.

Article 1141  Termination:
(a)  The Company may terminate a probationary employee at will.
(b)  A probationary employee is one whose Total Service after the date of last employment or reinstatement does not exceed one year.

Article 1151  Exercising Rights:
Neither party shall exercise any right under this agreement in an arbitrary manner, but each party shall exercise its right in a reasonable manner and in good faith.


## III.

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Under Rule 56, summary judgment must be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

4

the burden of proof at trial." ***Little v. Liquid Air Corp.***, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting ***Celotex v. Catrett***, 477 U.S. 317, 322 (1986)). In a bench trial, the court has "somewhat greater discretion to consider what weight it will afford the evidence" than it would in a jury trial. ***In re Placide Oil Co.***, 932 F.2d 394, 397 (5th Cir. 1991). We review the lower court's grant of summary judgment *de novo*. *See* ***Carpenters Dist. Council v. Dillard Dep't Stores***, 15 F.3d 1275, 1281 (5th Cir. 1994).

## IV.

Due to its inherently contractual nature, arbitration may be ordered only for a dispute that the parties have agreed to arbitrate. *See* ***AT&T Techs., Inc. v. Communication Workers of Am.***, 475 U.S. 643, 648-49 (1986). ExxonMobil can therefore be compelled to arbitrate only those disputes contemplated by the CBA. As such, the sole inquiry before us is whether Michael Melancon's discharge is an arbitrable grievance under the CBA.

ExxonMobil first directs our attention to Article 1141 of the CBA, which states that probationary employees are "at-will" employees. At-will employees in Louisiana may be discharged with or without cause, and in no case is the employer liable for wrongful discharge. *See* ***Stevenson v. Lavalco, Inc.***, 669 So. 2d

5

608, 611 (La. App. 2d. Cir. 1996); *Hoover v. Livingston Bank*, 451 So. 2d 3, 4-5 (La. App. 1st Cir. 1984).

The Union counters that Article 1121 allows an employee to be disciplined only for cause. While this may be so, Article 1122, which discusses rights of the disciplined employee, explicitly bestows an arbitration right only for non-probationary employees facing certain specifically enumerated sanctions. Thus, while all employees have some remedy against wrongful discharge (i.e., grievance procedures), arbitration is *not* a remedy afforded probationary employees in such cases. This is consistent with Article 1141's "at will" distinction between probationary and permanent employees.

The Union also points to Article 1151's admonishment that "[n]either party shall exercise any right under this agreement in an arbitrary manner, but each party shall exercise its right in a reasonable manner and in good faith." Because Article 251 provides that "an arbitrable grievance is a good faith claim by one party that the other party has violated a written provision of the agreement," the Union argues that the reasonableness of the decision to discharge Melancon is "an arbitrable grievance." However, we decline to rely on this catchall phrase to create a right of arbitration that clearly does not exist under the terms of the CBA, and which would explicitly conflict with the CBA's express provision allowing ExxonMobil to discharge probationary employees

6

"at will." Clearly, if *only* non-probationary employees are allowed to arbitrate serious sanctions or discharge under Article 1122, then it follows that there must be *some* employees covered by the CBA that may not arbitrate sanctions or discharge. Because probationary employees have the fewest rights under the CBA of all employees in that they are the only ones that can be terminated at will, it is evident that the CBA does not contemplate arbitration of termination decisions regarding probationary workers. This is because if permanent employees could be terminated in the same manner, or if probationary employees had the same recourse as their permanent counterparts following termination, Article 1141 (allowing at-will discharge of probationary employees) and Article 1122 (permitting non-probationary employees to arbitrate the reasonableness of certain articulated serious sanctions, including discharge) would both be rendered meaningless. *See, e.g., Texas E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741-42 (5th Cir. 1998) ("[U]nder Louisiana law[,] . . . [c]ontract provisions susceptible to different meanings should be interpreted to avoid neutralizing or ignoring any of them or treating them as surplusage.").

Finally, the Union relies on Article 144, which, it asserts, prohibits one party to the CBA from performing unlawful acts under the CBA. However, the Article's actual text reveals that, contrary to the Union's assertions, Article 144 does not prohibit the

7

Company from acting in violation of the law; rather, it prohibits the Company from being *forced* to act in violation of the law by a provision of the CBA. Specifically, it states that "[i]f this Agreement requires a party to do anything which is prohibited by law, the requirement is invalid." We do not read this provision as providing a basis for compelling ExxonMobil to arbitrate the Union's claim that Melancon's discharge was unlawful.

## V.

It is a fundamental axiom of contract interpretation that specific provisions control general provisions. *See* RESTATEMENT (SECOND) OF CONTRACTS § 203(c). And, as the Union notes, we must "honor the presumption that parties to a contract intend every clause to have some effect." *Chapman v. Orange Rice Milling Co.*, 747 F.2d 981, 983 (5th Cir. 1984). There is simply no way to give effect to Article 1122 and Article 1140 while simultaneously allowing the Union to proceed to arbitration. Accordingly, because we conclude that the CBA cannot fairly be interpreted to allow the Union to arbitrate the dismissal of Michael Melancon, the judgment of the district court is REVERSED.

8