United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

**No. 05-20210
Summary Calendar**

**DAVID FOSTER,**

**Plaintiff-Appellant,**

**versus**

**SOLVAY PHARMACEUTICALS, INC.,**

**Defendant-Appellee.**

**Appeal from the United States District Court
for the Southern District of Texas
(4:02-CV-4462)**

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In contesting the summary judgment awarded Solvay Pharmaceuticals, Inc., David Foster claims retaliation in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e (2000).

Solvay hired Foster in 2000. Foster's title was Manager, Managed Care West; he managed regional account executives (RAEs) and cultivated corporate accounts. Stanley Ferrell was Manager,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Managed Care East, with the same responsibilities as Foster. They reported to Jim Herman.

Foster claims Herman engaged in gender discrimination by awarding Solvay's President's Club Award (the award) to a male, Joe Law, instead of to Suzanne Berger-Barrali, a female. Foster alleges he was retaliated against – demoted and later fired – for challenging Herman's such discrimination.

The highest level of recognition given the company's sales force, the award is given to RAEs based on their sales performance; overall performance reviews are used as tie-breakers. Foster and Ferrell were responsible for conducting the performance appraisals of the RAEs they supervised. Herman had the ultimate authority to determine the winner.

In 2000, Herman's assistant, Manuela Barolet, was responsible for tracking and calculating the award standings. She routinely sent emails to Foster, Ferrell, Herman, and others, updating them. Barolet sent one email stating that, with one month left before the selection for the award, Berger-Barrali was leading; results, however, were not final and would be announced at the National Business Meeting in January 2001. The email reminded that overall performance rankings would be used as tie-breakers. As noted, Herman had final authority to determine the winner.

Law and Berger-Barrali worked under Ferrell's supervision; he was responsible for submitting their evaluations to Herman. When

2

Herman made the selection, his records indicated Law's *quantitative* reviews were better than Berger-Barrali's; Herman did not yet have *qualitative* reviews for the two. Herman believed, however, that Law exhibited better leadership qualities. Therefore, he selected Law.

Berger-Barrali was surprised and upset when she did not win; she complained to Ferrell and others, including Foster. While still at the January 2001 National Business Meeting, Foster complained to Herman on Berger-Barrali's behalf. Foster claims this first complaint charged gender bias. As discussed *infra*, the record demonstrates, however, that 11 October 2001 was the first time Foster mentioned such bias, in an email to Solvay's Human Resources department.

That October, before Foster emailed the Human Resources department, Herman decided to reorganize Solvay's sales department, an event that occurred almost yearly. Herman hoped it would help streamline the department and improve internal relations. The reorganization plan, which became effective in January 2002, created a new management position that took the place of both Managers, Managed Care. Herman did not consider Foster for the new management position because he did not think Foster had the requisite qualities and skills.

Foster was reassigned to a new position, Corporate Account Executive (CAE). Ron Piela, Foster's former subordinate, was named

3

Area Manager; in Foster's new CAE role, he reported to Piela. Foster asserts Piela's only prior management experience was working at Pizza Hut. Solvay contends it chose Piela because he, unlike Foster, had the necessary skills. Foster was offered a different position, one that raised his salary by $2,800.

In June 2002, Foster complained to the Equal Employment Opportunity Commission that he had been retaliated against for reporting Herman's discriminatory conduct. The EEOC found no evidence of discrimination and issued a right-to-sue letter.

Foster continued to work for Solvay after filing this action in late 2002. Due to changes within Solvay unrelated to this action, Herman no longer supervised Foster. Beginning in early 2003, Foster was supervised by Pete Wardlaw; Wade Smith, who replaced Herman in late 2002, supervised Wardlaw. Smith placed Foster on a Performance Improvement Plan (PIP), starting in January 2003. No evidence suggests Smith was aware of the action at hand when he implemented the PIP. Foster failed to meet several of the PIP's goals and was fired in May 2003.

Foster amended his complaint to claim he was terminated in retaliation for filing the EEOC charge and this action. Summary judgment was awarded Solvay in early 2005.

A summary judgment is reviewed *de novo* under Rule 56 of the Federal Rules of Civil Procedure. *E.g.*, **Baton *Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.***, 289 F.3d 373, 376 (5th Cir.

2002). Such judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c). Evidence is construed in the light most favorable to the non-movant. *E.g.*, **Kee v. City of Rowlett**, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001). If a plaintiff fails to prove an essential element of his claim, summary judgment must be granted. **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986). A party opposing summary judgment may not rest on the pleadings, but rather must provide specific facts showing the existence of a genuine issue for trial. *E.g.*, **Ragas v. Tennessee Gas Pipeline Co.**, 136 F.3d 455, 458 (5th Cir. 1998). Foster fails to demonstrate a genuine issue of material fact.

For retaliation, the plaintiff must show: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) the protected activity was linked to the adverse action. *E.g.*, **Long v. Eastfield Coll.**, 88 F.3d 300, 304 (5th Cir. 1996). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to demonstrate a legitimate, non-retaliatory reason for the adverse employment action. **Id**. at 304-05. If the defendant produces such evidence, "the focus shifts to the ultimate question of whether the defendant unlawfully

retaliated against the plaintiff". *Id*. at 305. The ultimate determination asks whether filing the protected activity was a but-for cause of the retaliation. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (stating that when the defendant offers a nondiscriminatory reason for the adverse employment action, the Fifth Circuit has consistently required the plaintiff to prove that but for the discriminatory purpose, he would not have been fired).

An employee engages in protected activity by (1) opposing an employment practice made illegal by Title VII, or (2) if he has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *Long*, 88 F.3d at 304 (citing 42 U.S.C. § 2000e-3(a)). Although the underlying practice need not be illegal, the employee must at least reasonably believe it to be so. *Id*.

Foster was at Solvay's January 2001 National Business Meeting, where the award was presented, when he first complained about Berger-Barrali's not receiving it. Nothing in the record, however, supports Foster's contention that he claimed gender discrimination then.

As noted, Foster never claimed such bias until his 11 October 2001 email to the Human Resources department. That email said Foster first thought Herman's choice for the award was based on personal bias, but that Foster changed his mind and "now

6

[considered] it as an example of gender bias". Therefore, the district court correctly held Foster's January 2001 activity was not protected under Title VII.

Foster did, however, engage in protected activity in October 2001 when he claimed gender discrimination through his telephone call and email to Solvay's Human Resources department. In addition, before he was fired, Foster engaged in protected activity by filing a complaint with the EEOC and by filing this action.

Title VII addresses only ultimate employment actions, such as "hiring, granting leave, discharging, promoting, and compensating". *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995) (internal citation omitted). Although Foster was told on 8 October 2001, prior to sending the protected email, that he would not be considered for the new CAE position, he was not reassigned until January 2002. Foster was not a manager in this new position. The loss of management responsibilities can arguably be seen as a demotion or failure to promote, either of which are ultimate employment actions. *See Id*. Therefore, as the district court held, viewing the evidence in the light most favorable to the Foster, he has established the second part of a prima facie Title VII violation.

For a prima facie case of retaliation, Foster must also demonstrate any adverse employment actions were based, in part, on Solvay's knowing about Foster's protected activity. *Sherrod v. Am.*

*Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).  Because Foster was told before making any gender discrimination claims he would not be considered for the CAE position, he cannot demonstrate his reassignment was based, in part, on his protected activity. Solvay did not have to put on hold Foster's previously planned job reassignment simply because he subsequently engaged in protected activity.  *See* **Clark County Sch. Dist. v. Breeden**, 532 U.S. 268, 272 (2001).

Foster was fired in May 2003, six months after filing this action and nearly a year after filing his EEOC complaint.  Contrary to Foster's contention, this time gap is too great to establish retaliation based merely on temporal proximity.  *Id*. at 273-74 (collecting cases) (stating time gap must be very close, and discussing cases where three and four month gaps have been deemed too long to establish a causal link).

Foster was fired because he failed to fulfill certain responsibilities in his PIP.  He was put on this plan on 24 January 2003, the same day Solvay filed its answer to this action.  Foster states complaints about his performance did not arise until after he filed his EEOC complaint and this action, and, therefore, that the PIP and his firing were in retaliation for protected activity. No evidence suggests, however, that Smith, who instituted the PIP, knew about the EEOC complaint or this action until February or March 2003.

8

The PIP included a written warning that failure to follow the plan could result in termination. Uncontroverted evidence demonstrates Foster failed to fulfill his duties under the PIP. It was not enacted in retaliation for protected activity; Foster's termination for failure to follow the PIP was also not retaliation. Because Foster would have been terminated regardless of his protected activity, summary judgment was proper.

***AFFIRM***