# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 16, 2011

No. 07-30559

Lyle W. Cayce
Clerk

PAPER, ALLIED-INDUSTRIAL CHEMICAL AND ENERGY WORKERS INTERNATIONAL UNION, LOCAL 4-12, also known as Baton Rouge Oil and Chemical Workers Union,

Plaintiff–Appellee–Cross-Appellant,

v.

EXXON MOBIL CORPORATION, formerly known as Exxon Chemicals America, formerly known as Exxon Company USA,

Defendant–Appellant–Cross-Appellee.

Appeals from the United States District Court
for the Middle District of Louisiana

Before BARKSDALE, OWEN, and SOUTHWICK, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 4-12 (the Union) brought this suit to compel Exxon Mobil Corporation (ExxonMobil) to arbitrate two labor grievances pursuant to the parties' collective bargaining agreement.  The district court granted the Union's motion for summary judgment with respect to one grievance but denied it with respect to the other and denied ExxonMobil's motion for summary judgment.

No. 07-30559

The Union and ExxonMobil have both appealed.  We reverse in part and affirm in part, holding that neither grievance is arbitrable.

## I

The Union represents certain employees at ExxonMobil's Baton Rouge, Louisiana, refinery and chemical plant.  The Union and ExxonMobil entered into two collective bargaining agreements (to which we will refer in the singular as the collective bargaining agreement or the agreement), the first effective from April 1996 to March 2002 and the second from April 2002 to March 2006.  The two agreements are identical in all relevant respects and contain an arbitration clause that defines an "arbitrable grievance" as "a good faith claim by one party that the other party has violated a written provision of this agreement."

The parties' dispute focuses on the following provisions of the agreement:

212. <u>Recognition of Management Functions</u>

(a)     The Union recognizes that the Employer has the right, on its own initiative, to perform any function of management at any time, so long as it does not violate any express provision of this Agreement.

(b)     The following acts are functions of management:

(1)     Those acts which are not within the area of collective bargaining as required by the National Labor Relations Act;

(2)     Those acts which are usually exercised by other employers; and

(3)     Those acts which management should exercise in order to properly manage the business.

No. 07-30559

251. <u>What Grievances Are Arbitrable</u>

An arbitrable grievance is a good faith claim by one party that the other party has violated a written provision of this Agreement. If the claim is disputed, the issue is either

(1) The interpretation of the provision, or

(2) The facts, or both.

1131. <u>General</u>

(a)   The company may let independent contracts. But it will not let a maintenance contract or contracts that will cause an employee in either Mechanical Division who has five or more years of Plant Service to be laid off for lack of work during the term of this agreement.

(b)   A maintenance contract is one which provides for the performance of maintenance work within the Refinery and Chemical Plant bounds which has customarily been performed by employees in the Mechanical Divisions.

1151. <u>Exercising Rights</u>

Neither party shall exercise any right under this agreement in an arbitrary manner, but each party shall exercise its rights in a reasonable manner and in good faith.

In 1997, ExxonMobil announced that it would begin contracting out the loading and unloading of tank trucks and railroad tank cars at its Baton Rouge chemical plant. This action displaced bargaining unit employees but resulted in no layoffs, since those employees were assigned to other work at the plant with the same classification, seniority, and pay rate. The Union filed a grievance (the contracting-out grievance) with ExxonMobil asserting that a number of sections of the collective bargaining agreement, including Sections 1131 and

3

No. 07-30559

1151, had been violated.    After following the formal grievance process, ExxonMobil denied the claim.

Five years later, in 2002, ExxonMobil eliminated two and one-half bargaining unit posts at the Baton Rouge facility.  The Union filed a grievance (the post-reduction grievance) asserting that this action violated Section 1151 of the collective bargaining agreement.  The grievance process was initiated, and ExxonMobil ultimately denied the claim.

The Union filed a formal demand for arbitration of both grievances. ExxonMobil declined to proceed to arbitration, asserting that the grievances were not arbitrable under the collective bargaining agreement.  The Union then filed suit in district court seeking to compel arbitration.  Both parties moved for summary judgment, and the district court granted the Union's motion in part and denied the motion in part, holding that the contracting-out grievance was arbitrable but the post-reduction grievance was not.  The district court denied ExxonMobil's motion for summary judgment as "moot" and dismissed the Union's action.  Both parties then appealed to this court.

## II

This court reviews an order compelling arbitration de novo.[1]  Likewise, we review de novo the denial of a motion to compel arbitration.[2]

## III

In determining whether the grievances at issue are arbitrable, we must examine the scope of the parties' agreement, as reflected in the arbitration clause.  If the collective bargaining agreement provided that "[a]n arbitrable

---

[1] *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 4-2001 v. ExxonMobil Refining & Supply Co.,* 449 F.3d 616, 619 (5th Cir. 2006).

[2] *Gen. Warehousemen & Helpers Union Local 767 v. Albertson's Distrib., Inc.*, 331 F.3d 485, 487 (2003) (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir.1998)).

No. 07-30559

grievance is a claim by one party that the other party has violated a written provision of this Agreement," our task would be an easy one.  The Union's claim that Exxon-Mobil violated section 1131 of the agreement when it engaged independent contractors would be arbitrable.  But that is not what the agreement provides.  The element of "good faith" is included in the arbitration clause.  The words "good faith" are not surplusage and reflect that not every claim that the collective bargaining agreement has been violated is arbitrable.  Only "good faith claim[s] by one party that the other party has violated a written provision of [the CBA]" is arbitrable.  As the Supreme Court has repeatedly reminded courts and litigants, "[a]s with any agreement to arbitrate, we are obliged to enforce the parties' . . . agreement 'according to its terms.'"[3] "[P]arties may agree to limit the issues they choose to arbitrate,"[4] and the parties have done so here.

The context of the term "good faith" in the collective bargaining agreement indicates that it is not an entirely subjective standard.  There must be a good faith claim that "a written provision" of the agreement has been violated.  The plausibility of a claim that a written provision has not been honored is indicative of whether that claim can be in good faith.

Our court had occasion to construe an identical  "good faith" arbitration provision in a case in which the meaning of the terms "other conditions of employment" and "working conditions" in a collective bargaining agreement were at issue.[5]  Our court concluded that because these terms were "sufficiently broad to be susceptible of varying interpretations," there was a good faith claim

---

[3] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1772 n.8 (2010) (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58 (1995)).

[4] *Id.* at 1774.

[5] *Humble Oil & Ref. Co. v. Indep. Indus. Workers Union*, 337 F.2d 321, 324 (5th Cir. 1964).

by the Union that the employer had violated a written provision of the collective bargaining agreement.[6]  The corollary of that holding is that if a contractual provision is not susceptible of varying interpretations under the circumstances of the dispute, the claim that there has been a violation may not be in good faith.

This does not mean that contentions regarding an unambiguous provision are not in good faith if a court ultimately determines, as a matter of law, that the interpretation advanced is incorrect.  "Good faith" does not necessarily equate to "meritorious," since a party can bring a losing argument in good faith. Nevertheless, the merits of the claim can be probative as to the good faith of the party bringing the claim when the claim is not colorable or is frivolous.

We recognize that in determining whether the Union's claim regarding contracting out is a "good faith" one and therefore arbitrable entails an assessment of the merits of the contract construction dispute.  We are mindful of the Supreme Court's statement in *AT&T Technologies, Inc. v. Communications Workers of America* that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."[7]  However, the context of that statement reflects that the Court had in mind an agreement in which the parties

---

[6] *Id.*

[7] 475 U.S. 643, 649 (1986); *see also id.* at 649-50 (quoting *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960)):

> [I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.  Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator.  "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

agreed "'to submit all grievances to arbitration, not merely those which the court will deem meritorious.'"[8] The Union and ExxonMobil have not agreed to submit *all* grievances to arbitration. We must therefore discern whether the particular grievances at issue are within the scope of the arbitration agreement, even if we must delve into the merits of the underlying dispute to some degree.

Our reading of *AT&T* is consistent with the Supreme Court's subsequent decision in *Litton*, in which the Court cited *AT&T* in response to a dissenting opinion's argument that the Court was impermissibly deciding "an issue of contract interpretation to be submitted to an arbitrator in the first instance."[9] The Supreme Court observed that "[w]hether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court, and a party cannot be forced to 'arbitrate the arbitrability question.'"[10] The Supreme Court expressly held in *Litton* that "we must determine whether the parties agreed to arbitrate this dispute, and we cannot avoid that duty because it requires us to interpret a provision of a bargaining agreement."[11] In *Litton*, the collective bargaining agreement in question had expired before the grievances were filed and both the merits of the case and the arbitrability question hinged on whether the rights asserted in the grievances "accrued or vested under the Agreement" or "carried over after expiration of the Agreement."[12]

---

[8] *Id.*

[9] *Litton Fin. Printing Div., A Div. of Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 208-09 (1991).

[10] *Id.* (quoting *AT&T*, 475 U.S. at 651).

[11] *Id.* at 209.

[12] *Id.* at 209.

No. 07-30559

We followed *Litton* in *Local Union No. 898 of the International Brotherhood of Electrical Workers v. XL Electric, Inc.*, holding that "the question of arbitrability is a question for the court . . . even if answering the arbitrability question requires a construction of the contract."[13] Other circuits have taken a similar approach.[14]

The Union argues that *Litton* no longer applies and that two subsequent Supreme Court decisions, *Howsam v. Dean Witter Reynolds, Inc.*[15] and *Green Tree Financial Corp. v. Bazzle*,[16] set forth a new standard that this court should apply in the instant case. In *Howsam*, the question before the Court was whether a dispute over the applicability of a National Association of Securities Dealers (NASD) time limit bar was a "question of arbitrability" for a court to decide or a question reserved for the arbitrator.[17] Noting that a "question of arbitrability" was one "where contracting parties would likely have expected a court to have decided the gateway matter," the Court then held that, in the absence of an agreement, procedural arbitrability questions were reserved for the arbitrator, while substantive arbitrability questions were for a court to

---

[13] 380 F.3d 868, 870 (5th Cir. 2004) (interpreting a contract to determine whether it had been terminated in a case in which the arbitrability clause did not permit arbitration after the expiration of the contract).

[14] *See Crown Cork & Seal Co., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers*, 501 F.3d 912, 917 (8th Cir. 2007) (interpreting the provisions of an agreement to determine whether retiree health benefits vested under the agreement); *United Parcel Serv., Inc. v. Union De Tronquistas De P.R., Local 901*, 426 F.3d 470, 472 (1st Cir. 2005) (determining whether rights to vacation time accrued under an expired CBA)*; Indep. Lift Truck Builders Union v. Hyster Co.*, 2 F.3d 233, 235 (7th Cir. 1993) ("[T]he rule that courts must decide arbitrators' jurisdiction takes precedence over the rule that courts are not to decide the merits of the underlying dispute. If the court must, to decide the arbitrability issue, rule on the merits, so be it.").

[15] 537 U.S. 79 (2002).

[16] 539 U.S. 444 (2003).

[17] *Howsam*, 537 U.S. at 83.

decide.[18] Because the applicability of the NASD time limit rule was a "gateway question" that "called the grievance procedures into play," the Court left the question to the arbitrator.[19] The disputes presently before us do not concern an issue of procedural arbitrability.

In *Bazzle*, a plurality of the Court concluded that the question of whether a contract prohibited class arbitration was a procedural question for an arbitrator to decide.[20] Subsequently, the Court discussed the *Bazzle* plurality opinion at some length in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*[21] The Court ultimately held that "the parties cannot be compelled to submit their dispute to class arbitration" when "the parties stipulated that there was 'no agreement'" on whether "the parties *agreed to authorize* class arbitration."[22] Nothing in *AnimalFeeds International* alters our conclusion that it is within the province of the courts to decide whether "a good faith claim by one party that the other party has violated a written provision" of the bargaining agreement has been asserted.

### IV

The Union bases its contracting-out grievance on two provisions of the collective bargaining agreement—Section 1131 and Section 1151. ExxonMobil

---

[18] *Id.* at 83-85.

[19] *Id.* at 85 (quoting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 559 (1964)); *see also id.* (quoting with approval comments to the Revised Uniform Arbitration Act of 2000, RUAA § 6, comment 2, 7 U.L.A. 12, 13 (Supp. 2002), which said that "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.").

[20] *Bazzle*, 539 U.S. at 451.

[21] 130 S.Ct. 1758, 1771-1772 (2010).

[22] *Id.* at 1776.

argues that Section 1131 cannot support a claim that the contracting out violated the CBA because the express language of that section authorizes ExxonMobil to do what it did. ExxonMobil also contends that this court's opinion in *Baton Rouge Oil & Chemical Workers Union v. ExxonMobil Corp. (BROCWU)*[23] forecloses the Union's reliance on Section 1151 as a basis for arbitration. We agree with ExxonMobil and hold that the district court erred in granting summary judgment to the Union compelling arbitration of the contracting-out grievance.

Section 1131 specifically states that "[t]he company may let independent contracts," with the exception of "maintenance contract[s]"—that is, contracts for maintenance work that would otherwise be performed by employees in the Mechanical Divisions—that would "cause an employee in either Mechanical Division who has five or more years of Plant Service to be laid off for lack of work." The Union does not dispute that the contracted-out loading work is considered process work, not maintenance work, and that the contracting out resulted in no layoffs. Nor does the Union dispute that, on its face, Section 1131 authorizes the contracting out that occurred. Instead, the Union argues that the contracting out violates the original intent of Section 1131, which was to allow ExxonMobil to "obtain workers during peaks and valleys without diminishing the core of its work force." However, in a case in which, as in this one, the language of the contract is clear and unambiguous, courts may not inquire into the intent of the parties to contradict that plain meaning.[24] The Union has pointed to no ambiguities in the contract that would open the door for an examination of the parties' intent. In light of the clarity of the parties'

---

[23] 289 F.3d 373 (5th Cir. 2002).

[24] *See, e.g.,* LA. CIV. CODE ANN. art. 2046 (2008) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

agreement, the Union's claim that ExxonMobil has violated Section 1131 when the language of that section explicitly authorizes its actions is not colorable and cannot constitute a good faith claim within the meaning of the arbitration clause.

The Union insists that reading Section 1151 in conjunction with Section 1131 creates a basis for a good faith claim that the contracting out violated the collective bargaining agreement. Section 1151 provides that both parties to that agreement must not exercise their rights in an "arbitrary manner," but must exercise them "in a reasonable manner and in good faith." The Union contends that ExxonMobil's refusals 1) to provide evidence to the Union that the contracting out was necessary for cost savings or 2) to consider offers about how the Union employees could perform more economically to save the company money were arbitrary and in bad faith.

ExxonMobil argues that Section 1151 cannot serve as a basis for arbitration, citing this court's opinion in *BROCWU*,[25] a case involving a dispute between the Union's predecessor and ExxonMobil arising under the same collective bargaining agreement at issue here. In *BROCWU*, we determined that the agreement did not require ExxonMobil to arbitrate a grievance protesting the discharge of probationary employees.[26] The collective bargaining agreement gave non-probationary employees a right to arbitrate the imposition of serious sanctions or discharge. We held that this grant of an arbitration right to non-probationary employees implied that probationary employees did not have such a right.[27] The Union argued that, despite this specific provision limiting arbitration to non-probationary employees, the discharge was arbitrary and not

---

[25] 289 F.3d 373 (5th Cir. 2002).

[26] *Id.* at 374.

[27] *Id.* at 376.

in good faith in violation of Section 1151, and that, accordingly, the arbitration clause contained in Section 251 made that grievance arbitrable.[28]

We held that Section 1151 and Section 251 did not make the otherwise non-arbitrable grievance arbitrable. We "decline[d] to rely on this catchall phrase [Section 1151] to create a right of arbitration that clearly does not exist under the terms of the CBA, and which would explicitly conflict with the CBA's express provision allowing ExxonMobil to discharge probationary employees 'at will.'"[29] We held that the specific provision that excluded the grievance from arbitration would have been "rendered meaningless" if Section 1151 were interpreted to allow arbitration for probationary employees.[30]

We agree with ExxonMobil that *BROCWU* forecloses reliance on Section 1151 as an independent basis for arbitrability of the contracting-out grievance. To read Section 1151 in a way that would transform an otherwise non-arbitrable grievance into an arbitrable one would render Section 251's good faith requirement meaningless, since the Union could always assert that ExxonMobil was exercising its rights arbitrarily or not in good faith under Section 1151. Such a reading would also explicitly conflict with the collective bargaining agreement's express provision allowing ExxonMobil to contract out process work that does not result in layoffs. Accordingly, the rationale behind the *BROCWU* decision applies equally here and the Union may not rely on Section 1151 as a basis for arbitrability.

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

No. 07-30559

V

The Union also bases its post-reduction grievance on Section 1151. The Union asserts that the post-reduction grievance is arbitrable because it is a good faith claim that ExxonMobil has violated Sections 212 and 1151 by unilaterally reducing two and one-half bargaining unit posts. Section 212 permits ExxonMobil to "perform any function of management at any time, so long as it does not violate any express provision of this Agreement." Though the Union does not dispute that the post reduction was a function of management, it argues that this right was exercised arbitrarily and in bad faith in violation of Section 1151. The Union expends great effort discussing the facts underpinning its claims. But the Union cites to no "express provision" of the collective bargaining agreement within the meaning of Section 212 that ExxonMobil has violated. For the same reasons that we hold that the contracting-out grievance is not arbitrable under Section 1151, we hold that Section 1151 cannot serve as a basis for requiring arbitration of the post-reduction claim.

\*     \*     \*

For the foregoing reasons, we REVERSE the district court's grant of the Union's motion for summary judgment with regard to the contracting-out grievance, AFFIRM the district court's denial of the Union's motion for summary judgment with regard to the post-reduction grievance, and REVERSE the district court's denial of ExxonMobil's motion for summary judgment.