# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 4, 2014

No. 12-60922

Lyle W. Cayce
Clerk

CRAWFORD PROFESSIONAL DRUGS, INCORPORATED; SERVICE REXALL DRUGS; OKOLONA DRUG COMPANY, INCORPORATED; BSW, INCORPORATED; BURNHAM-MCKINNEY PHARMACIES, INCORPORATED; FRENCH'S PHARMACY, INCORPORATED; JOHN W. FARRIS, doing business as Ridgeland Discount Drugs, Incorporated, also known as Bo; CONDON'S EAST UNION PHARMACY, INCORPORATED; MCGUFFEE DRUGS, INCORPORATED; PLAZA PHARMACY, INCORPORATED; SOUTHERN DISCOUNT DRUGS OF CHARLESTON, INCORPORATED; MEDICAL PLAZA PHARMACY, INCORPORATED; ESSCO/SHOOZ TOO!, INCORPORATED; SAVE RITE PHARMACY, INCORPORATED; ROCKY MCGARITY, doing business as Edwards's Discount Drugs; MAGIC MART PHARMACY, INCORPORATED; W. J. (BILL) MOSBY, doing business as Mosby's Drug Store; MACON CITY DRUG STORE, INCORPORATED; ASHLAND DRUGS, INCORPORATED; BRANDON DISCOUNT DRUGS, INCORPORATED; DUNCAN'S PHARMACY, INCORPORATED; RICHARD LITTLE, doing business as Little's Pharmacy; TYSON DRUGS, INCORPORATED,

Plaintiffs - Appellants

v.

CVS CAREMARK CORPORATION; CVS PHARMACY, INCORPORATED; CAREMARK RX, L.L.C.; CAREMARK, L.L.C.,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

No. 12-60922

Before SMITH, DENNIS, and HIGGINSON, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

The principal issue in this appeal is whether the district court erred in ordering the plaintiffs to submit their claims to arbitration. The Plaintiffs, entities that operate twenty-three locally owned drug stores in Mississippi, brought suit in Mississippi state court against the Defendants seeking damages and declarative and injunctive relief. The four Defendants, (1) Caremark, L.L.C. ("Caremark"), (2) CVS Caremark Corporation ("CVS Caremark"), (3) CVS Pharmacy, Inc. ("CVS Pharmacy"), and (4) Caremark Rx, L.L.C. ("Caremark Rx"), own and operate the second-largest chain of pharmacies and the largest pharmacy-benefit-management ("PBM") network[1] in the United States. In their suit, the Plaintiffs assert two claims: first, that the Defendants committed common-law trade-secret misappropriation and intentional interference with business relations by unlawfully taking patient and prescription information confidentially disclosed by the Plaintiffs and by using that data to persuade patients and consumers to have prescriptions filled by pharmacies owned and operated by the Defendants, rather than by the Plaintiffs' drug stores; and, second, that the Defendants, by excluding the Plaintiffs from certain Defendant-administered PBM networks have violated Mississippi's Any Willing Provider Law, which protects a patient's right to use any pharmacy of his choosing.

It is undisputed that two Plaintiffs entered into an agreement with Caremark ("the Provider Agreement"), which incorporates by reference another

---

[1] PBMs "act as an intermediary between the payor"—often insurance companies—"and everyone else in the health-care system." Thomas Gryta, *What Is a 'Pharmacy Benefit Manager?,'* WALL ST. J., July 21, 2011, http://online.wsj.com/news/articles/SB10001424053111903554904576460032266405328. PBMs "generally make money through service fees from large customer contracts for processing prescriptions." *Id.* Therefore, and as relevant in this case, PBMs process and pay pharmacies, such as the Plaintiffs, for filling prescriptions for patients and consumers insured under health-insurance plans that the PBMs manage.

No. 12-60922

document ("the Provider Manual"), which contains an arbitration clause.  It is also undisputed that all other Plaintiffs entered into a Provider Agreement, which incorporates by reference the Provider Manual, with CaremarkPCS, which is not one of the four Defendants named in this suit.  The remaining three Defendants—CVS Caremark, CVS Pharmacy, and Caremark Rx ("the non-signatory Defendants")—are non-signatories to any iteration of the Provider Agreement.  After removing the Plaintiffs' suit to federal court, all four Defendants moved to compel the Plaintiffs to arbitrate their claims pursuant to the arbitration contracts to which all or most the Defendants were not signatories  under the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. §§ 3-4.  The Plaintiffs opposed the motion to compel arbitration, arguing that: (1) they may not be compelled to arbitrate their claims against the non-signatory Defendants because they had never entered into an agreement to arbitrate with those entities; (2) their claims are not subject to the Provider Agreement's arbitration clause; and (3) the Provider Agreement and the Provider Manual's arbitration clause are procedurally and substantively unconscionable under Mississippi law.  The district court rejected the Plaintiffs' arguments and ordered them to submit their claims against all four Defendants to arbitration.

In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), the Supreme Court held that, under the FAA, traditional principles of state law may allow an arbitration contract to be enforced by or against nonparties to the contract through a number of state-contract-law theories, including equitable estoppel.  The relevant Arizona law, made controlling by the Provider Agreement's choice-of-law clause, supports the non-signatory Defendants' motion to enforce the agreement to arbitrate against the Plaintiffs based on state-law equitable estoppel doctrine.  Accordingly we AFFIRM the district court's judgment compelling arbitration.  Coincidentally, we recognize that our prior decisions applying federal common law, rather than state contract law, to decide such

No. 12-60922

questions, *see Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000), have been modified to conform with *Arthur Andersen*.

## BACKGROUND

The Defendants were formed in 2007 when CVS, a national pharmacy chain, merged with Caremark, the PBM. Insurance carriers frequently hire PBMs to administer the payment of claims for prescription drugs. Accordingly, following the merger, the Defendants operated retail pharmacies that were direct competitors to those owned and operated by the Plaintiffs. At the same time, the Defendants became responsible for administering insurance claims for prescription drug benefits. Each Plaintiff provides services in at least one of the PBM networks operated by the Defendants. They receive access to participants in those networks in exchange for agreeing to fill prescriptions at discounted prices.

The Plaintiffs brought suit against the Defendants in Mississippi state court. The Plaintiffs assert that the Defendants conspired in various ways to harm the Plaintiffs' business interests. In particular, the Plaintiffs allege that the Defendants collected proprietary patient information from local pharmacies that participate in their PBM networks and used that information for the financial benefit of CVS pharmacies. The Plaintiffs further allege that the Defendants accepted payments from drug companies to directly market certain drugs to patients who are likely candidates based on their prescription history and that the Defendants directly targeted patients who filled subscriptions at non-CVS pharmacies for marketing of CVS pharmacies and services. Lastly, the Plaintiffs assert that the Defendants conspired to deprive patients of their right to use any pharmacy of their choosing by forming pharmacy networks that either exclude non-CVS pharmacies or provide economic incentives for using CVS

No. 12-60922

pharmacies. *See* MISS. CODE ANN. § 83-9-6.[2]  The Plaintiffs allege that the Defendants coerced prescription-drug benefit plans into requiring that all routine maintenance prescriptions be filled at CVS pharmacies. The Plaintiffs argued that these actions deprived them of millions of dollars in potential business and that the Defendants' actions violated Mississippi's Uniform Trade Secrets Act and Any Willing Provider Law. Additionally, the Plaintiffs claimed intentional interference with business relations and requested damages and injunctive relief.

The Defendants removed the action to the U.S. District Court for the Southern District of Mississippi and moved to compel the Plaintiffs to arbitrate their claims against all four Defendants (or, in the alternative, to stay the federal proceeding until arbitration was completed) on the basis of the Provider Agreement and the Provider Manual's arbitration clause. The district court found—and the Plaintiffs have not disputed—that each Plaintiff is a party to a Provider Agreement that incorporates the terms of the Provider Manual, which in turn includes an arbitration clause. That clause provides:

> Any and all disputes in connection with or arising out of the Provider Agreement by the parties will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association. The arbitrator must follow the rule of Law, and may only award remedies provided for in the Provider Agreement. . . . Any such arbitration must be conducted

---

[2] Mississippi's Any Willing Provider Law bars "[a] health insurance plan, policy, employee benefit plan or health maintenance organization" from "[p]rohibit[ing] or limit[ing] any person who is a participant or beneficiary of the policy or plan from selecting a pharmacy or pharmacist of his choice who has agreed to participate in the plan according to the terms offered by the insurer." *Id.* § 83-9-6(3)(a). The Law additionally prohibits "[d]eny[ing] a pharmacy or pharmacist the right to participate as a contract provider under the policy or plan if the pharmacy or pharmacist agrees to provide pharmacy services[] . . . that meet the terms and requirements set forth by the insurer under the policy or plan and agrees to the terms of reimbursement set forth by the insurer" and bars "[i]mpos[ing] a monetary advantage or penalty under a health benefit plan that would affect a beneficiary's choice among those pharmacies or pharmacists who have agreed to participate in the plan according to the terms offered by the insurer." *Id.* § 83-9-6(3)(b), (3)(d).

No. 12-60922

in Scottsdale, Arizona, and Provider agrees to such jurisdiction, unless otherwise agreed to by the parties in writing. The expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the award of the arbitrator is rendered. . . . Arbitration shall be the exclusive and final remedy for any dispute between the parties in connection with or arising out of the Provider Agreement; provided, however, that nothing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law. . . .

The district court granted the Defendants' motion to compel arbitration and dismissed the plaintiffs' civil actions with prejudice. The Plaintiffs filed a timely notice of appeal.

## STANDARD OF REVIEW

"This court reviews an order compelling arbitration de novo." *Paper, Allied-Indus. Chem. & Energy Workers Int'l Union, Local 4-12 v. Exxon Mobil Corp.*, 657 F.3d 272, 275 (5th Cir. 2011). "We review the district court's findings of fact under the clearly erroneous standard." *Cargill Inc. v. Golden Chariot MV*, 31 F.3d 316, 317 (5th Cir. 1994). We review the district court's use of equitable estoppel to compel arbitration for an abuse of discretion. *See Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 & n.4 (5th Cir. 2010). "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous." *Id.* at 473 (internal quotation marks omitted). Lastly, "we may affirm the district court on any ground supported by the record, and it is our duty to enunciate the correct law on the record facts." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 338 n.5 (5th Cir. 2004) (citing *Okeye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 511 (5th Cir. 2001); *Empire Life Ins. Co. of Am. v. Valdak Corp.*, 468 F.2d 330, 334 (5th Cir. 1972)).

No. 12-60922

## DISCUSSION

### I.

The Defendants ask us to rule that they may compel the Plaintiffs to arbitrate their claims. However, as an initial matter, we must consider what law applies to these questions—federal or state, Arizona or Mississippi.

### A.

FAA § 2—the Act's substantive mandate—"makes written arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract.'" *Arthur Andersen*, 556 U.S. at 629-30 (quoting 9 U.S.C. § 2). "That provision creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts 'to place such agreements upon the same footing as other contracts.'" *Id.* at 630 (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). FAA § 3, "in turn, allows litigants already in federal court to invoke agreements made enforceable by § 2." *Id.*

Neither § 2 nor § 3, however, "purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Id.* Section 2, for instance, "explicitly retains an external body of law governing revocation (such grounds 'as exist at law or in equity')." *Id.* (quoting 9 U.S.C. § 2). Further, the Supreme Court concluded that "§ 3 adds no substantive restrictions to § 2's enforceability mandate." *Id.* Rather, "'[s]tate law[]' . . . is applicable to determine which contracts are binding under § 2 and enforceable under § 3 '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" *Id.* at 630-31 (quoting *Perry v. Thomas*, 482 U.S. 482, 493 n.9 (1987)). These "background principles" of state contract law, when relevant, "allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party

No. 12-60922

beneficiary theories, waiver and estoppel.'" *Id.* at 631 (quoting 21 R. LORD, WILLISTON ON CONTRACTS § 57:19, at 183 (4th ed. 2001)). Accordingly, whenever the relevant state law would make a contract to arbitrate a particular dispute enforceable by a nonsignatory, that nonsignatory is entitled to request and obtain a stay under § 3 and an order to compel arbitration under § 4 because that dispute is "referable to arbitration under an agreement in writing." *Id.* at 630-32.

## B.

The Defendants assert that Arizona law applies on the basis of a choice-of-law clause in the Provider Agreement. That clause provides that "[u]nless otherwise mandated by applicable Law, the [Provider] Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions." The Plaintiffs assert that Mississippi law applies but otherwise do not explain why or address the Provider Agreement's choice-of-law clause. Pursuant to *Arthur Andersen*, then, we must determine which state's law is relevant, that of Arizona or that of Mississippi.

"A federal court sitting in diversity follows the choice of law rules of the state in which it sits." *Sorrels Steel Co., Inc. v. Great Sw. Corp.*, 906 F.2d 158, 167 (5th Cir.1990). "In the absence of law directly on point, Mississippi courts have approvingly cited the Restatement (Second) of Conflicts of Laws (1971)." *PIC Grp. Inc. v. LandCoast Insulation, Inc.*, 718 F. Supp. 2d 795, 799 (S.D. Miss. 2010) (citing *Sorrels Steel Co.*, 906 F.2d at 167); *see Boardman v. United Servs. Auto. Ass'n*, 470 So. 2d 1024, 1032-34 (Miss. 1985). In relevant part, the Restatement provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

8

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187(2).

"The first exception to the application of the state's law selected by contract is a lax one." *PIC Grp.*, 718 F. Supp. 2d at 800. "When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice." RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187(2) cmt. f. Before the district court, the Plaintiffs asserted, without elaboration, that "Arizona has no substantial relationship to pharmacies in Mississippi, nor to the prescriptions filed here." The Defendants, however, note that their business operations are located in Arizona and highlight that the Provider Manual requires the Plaintiffs to (1) direct any inquiries, grievances, or requested changes to Caremark's Scottsdale, Arizona office; (2) dispute a claim or request that a claim be adjusted via Caremark's Scottsdale office; and (3) appeal any audit Caremark conducts to ensure claims accuracy to Caremark's audit manager, located in the company's Scottsdale office. In the absence of evidence to the contrary, we conclude that the Plaintiffs have failed to demonstrate that Arizona "has no substantial relationship to the parties or the transaction [or that] there is no other reasonable basis for the parties' choice." RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187(2)(a).

Nor have the Plaintiffs demonstrated that § 187(2)'s second exception applies. Assuming arguendo that Mississippi "has a materially greater interest

No. 12-60922

than [Arizona] in the determination of the particular issue" and that Mississippi "would be the state of the applicable law in the absence of an effective choice of law by the parties,"[3] we must determine whether "application of the law of [Arizona] would be contrary to a fundamental policy" of Mississippi. *Id.* § 187(2)(b). Again, in the absence of evidence to the contrary, we conclude that the Plaintiffs have failed to demonstrate that applying Arizona law in this instance would be contrary to a fundamental policy of Mississippi. As discussed in greater detail *infra*, both states permit a non-signatory to an agreement containing an arbitration clause to compel a signatory to that agreement to arbitrate his claims under an equitable estoppel theory.[4] "The states obviously have different laws, and, even if the relevant statutes were identical, each state would have its own case law interpreting the bounds of the laws." *PIC Grp.*, 718 F. Supp. 2d at 800. Nevertheless, "[t]he forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187 cmt. g. Because the result would be the same under either state's law, application of Arizona law would not be contrary to a fundamental policy of Mississippi. Accordingly, we will apply Arizona law.

---

[3] No party has argued that any other state "has a materially greater interest . . . in the determination of the particular issue" or "would be the state of the applicable law in the absence of an effective choice of law by the parties." *Id.* § 187(2)(b). Moreover, it appears that, under the Restatement, Mississippi would be the state whose fundamental public policy we would compare to Arizona law. *See id.* § 188; *see also id.* § 6.

[4] *See Schoneberger v. Oezle*, 96 P.3d 1078, 1079 (Ariz. Ct. App. 2004); *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 542 (Cal. Ct. App. 2009); *Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1039 (Miss. 2010); *see also Moore v. Browning*, 50 P.3d 852, 860 (Ariz. 2002) (permitting reference to California law when interpreting Arizona law).

## C.

In *Schoneberger v. Oezle*, the Arizona Court of Appeals considered "whether an arbitration provision in an instrument establishing an irrevocable inter vivos trust may be enforced against trust beneficiaries who sued the trustors and trustees." 96 P.3d 1078, 1079 (Ariz. Ct. App. 2004). The court held that "the trust beneficiaries are not required to arbitrate their claims because such a trust is not a 'written contract' requiring arbitration." *Id.* Consequently, *Schoneberger* is not on all fours with the present appeal because (1) the existence of a trust, as opposed to a contract, was dispositive, (2) the court accordingly did not compel arbitration on the basis of equitable estoppel, and (3) the case involved the inverse situation from that present here: a *signatory defendant* sought to compel *non-signatory plaintiffs* to arbitrate certain claims.[5]

Nevertheless, the *Schoneberger* court appeared inclined to accept an arbitration-by-estoppel theory even though it did not so hold. *See id.* at 1081 n.5 (noting that "[u]nder well-established common law principles, a nonsignatory may be entitled to enforce, or be bound by, an arbitration provision in a contract executed by others"). Given this, it seems likely that Arizona courts would recognize arbitration by estoppel under different facts from those presented in

---

[5] This appeal requires us to consider whether a non-signatory to an agreement containing an arbitration clause may compel a signatory to that agreement to arbitrate his claim. The inverse scenario, often called "direct-benefit estoppel," considers whether a signatory to an agreement containing an arbitration clause may compel a non-signatory to that agreement to arbitrate his claim. The latter scenario is justified on the basis that courts will not permit a non-signatory to enjoy rights or benefits under an agreement while simultaneously avoiding that agreement's burdens and obligations. *See, e.g.*, *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006) ("Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.") (alteration in original) (internal quotation marks omitted); *see also Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 360-62 (5th Cir. 2003) (discussing distinctions between the two types of estoppel).

No. 12-60922

*Schoneberger*—namely, a situation in which, as here, *non-signatory defendants* seek to compel *signatory plaintiffs* to arbitrate certain claims.

Although there is a dearth of Arizona precedent on this subject—and on all fours with the facts of this case—the Arizona Supreme Court has said that "if Arizona law has not addressed an issue, we 'look approvingly to the laws of California,' especially when interpreting a similar or identical statute," so long as the reasoning of the California case law is sound. *Moore v. Browning*, 50 P.3d 852, 859 (Ariz. 2002) (quoting *State v. Vallejos*, 358 P.2d 178, 182 (Ariz. 1960)); *see also Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 310 n.4 (5th Cir. 2010) ("In making an *Erie* guess, this court may consult the decisions of other jurisdictions so long as the highest court of the forum state has not addressed the issue."). Therefore, to further explore whether Arizona would recognize an arbitration-by-estoppel theory, we may consider apposite and well reasoned California authority.

California courts recognize that "[a]s a general matter, one cannot be required to submit a dispute to arbitration unless one has agreed to do so." *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 542 (Ct. App. 2009). Nevertheless, "it is well-established that[] . . . a nonsignatory to an arbitration clause may, in certain circumstances, compel a signatory to arbitrate, based on ordinary contract and agency principles." *Id.* "Equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory." *Id.* at 541 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (internal quotation marks omitted). "The reason for this equitable rule is plain: One should not be permitted to rely on an agreement containing an arbitration clause for its claims, while at the same time repudiating the arbitration provision contained in the same contract." *DMS Servs., Inc. v. Superior Court*, 140 Cal. Rptr. 3d 896, 902 (Cal. Ct. App. 2012).

"The focus is [therefore] on the nature of the claims asserted by the plaintiff against the nonsignatory defendant." *Boucher v. Alliance Title Co.*, 25 Cal. Rptr. 3d 440, 447 (2005). Notably, however, the plaintiff to be estopped need not rely exclusively on the terms of the agreement containing an arbitration clause. *Id.* at 446.[6]

On review of the facts of this case and the Plaintiffs' allegations, we conclude that California's test for arbitration by estoppel—which informs our *Erie* guess whether Arizona would adopt such a test—is satisfied because the Plaintiffs' "claims against the nonsignatory [Defendants] are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause." *Goldman*, 92 Cal. Rptr. 3d at 541. The Plaintiffs' trade-secret misappropriation claim, for instance, alleges that the Defendants misused patient and prescription information. However, this information would not have been provided but for the Plaintiffs' participation in the Defendants' PBM network pursuant to the Provider Agreement. In order to prevail, the Plaintiffs must establish, *inter alia*, that the Defendants acquired the trade secret "through a breach of a confidential relationship or discovered by improper means." *Block Corp. v. Nunez*, No. 1:08-CV-53, 2008 WL 1884012, at *5 (N.D. Miss. Apr. 25, 2008). In their complaint, the Plaintiffs allege that they voluntarily provided the relevant information to the Defendants and so, to prevail, they must demonstrate that the Defendants exceeded the scope of their permitted use of this information. However, the Provider Manual, which the Provider Agreement incorporates by reference, states that the disclosed patient

---

[6] The *Goldman* court ruled, however, that "a nonsignatory may compel arbitration *only when* the claims against the nonsignatory are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause." 92 Cal. Rptr. 3d at 541 (emphasis added). "In other words," the court said, "allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough." *Id.*

and prescription information "is the property of Caremark, and [each Plaintiff] agrees not to claim any right, title, or interest in [the] information."  The Provider Manual further states that "Caremark has the right to use, reproduce, and adapt any information or data obtained from Provider in any manner deemed appropriate, even if such use is outside the scope of the Provider Agreement, provided such use is in accordance with applicable Law."

The Plaintiffs further allege that they were denied access to and participation in the Defendants' PBM network.  However, the Provider Agreement governs the PBM networks in which the Plaintiffs may participate as well as the terms of and eligibility to participate in Caremark's various networks.[7]  As such, the Plaintiffs' "claims against the nonsignatory [Defendants] are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause." *Goldman*, 92 Cal. Rptr. 3d at 541.[8]  Accordingly, because *Schoneberger* suggests that Arizona courts would likely accept an arbitration-by-estoppel theory, we believe that Arizona law, as informed by apposite and well reasoned California law, would permit the non-signatory Defendants to compel the signatory Plaintiffs to

---

[7] The Defendants have also argued that the Plaintiffs' business-interference claim and request for injunctive relief are derivative of their trade-secret misappropriation and Any-Willing-Provider-Law claims, an argument to which the Plaintiffs have failed to respond in their reply brief.

[8] Although "allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories, standing alone, are not enough," *id.*, we note that the Plaintiffs *have* alleged such misconduct.  In particular, in their complaint, the Plaintiffs asserted their claims against all four Defendants without distinction and specifically alleged that Caremark acted through the non-signatory Defendants in order to carry out the allegedly impermissible actions.  This, we believe, strengthens our conclusion that the Defendants may compel the Plaintiffs to arbitrate their claims.  We further observe that Mississippi law—the applicable law according to the Plaintiffs—permits arbitration by estoppel on the basis of allegations of substantially interdependent and concerted misconduct. *See Sawyers v. Herrin-Gear Chevrolet Co.*, 26 So. 3d 1026, 1039 (Miss. 2010).

No. 12-60922

arbitrate their claims. *See Moore*, 50 P.3d at 860; *Schoneberger*, 96 P.3d at 1081 n.5; *Goldman*, 92 Cal. Rptr. 3d at 541-42.

## D.

*Arthur Andersen* instructs that a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on, *inter alia*, equitable estoppel if the relevant state contract law so permits. Consequently, prior decisions allowing non-signatories to compel arbitration based on federal common law, rather than state contract law, such as *Grigson*, have been modified to conform with *Arthur Andersen. See, e.g.*, *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1172 (11th Cir. 2011) (holding that "to the extent any of our earlier decisions indicate to the contrary, those indications are overruled or at least undermined to the point of abrogation by [*Arthur Andersen*]").[9]

---

[9] *Accord Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen* and applying California law to the equitable estoppel analysis); *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 41-42 (1st Cir. 2012) (citing *Arthur Andersen* and applying Massachusetts law to the equitable estoppel analysis); *The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 13-14 (2d Cir. 2012) (citing *Arthur Andersen* and applying New York law to the equitable estoppel analysis); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x. 704, 708 n. 2 (10th Cir. 2011) (stating that *Arthur Andersen* "made it clear that state law governs who may be bound to an arbitration clause"); *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009) ("The Supreme Court has ruled that state contract law governs the ability of nonsignatories to enforce arbitration provisions."); *see also Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164, 170 (3d Cir. 2009) (recognizing, pre-*Arthur Andersen*, that state law determines whether non-signatories may be bound by an arbitration agreement); *MacDonald v. Unisys Corp.*, Civil Action No. 12-1705, 2013 WL 2626929, at *6 (E.D. Pa. 2013) ("Post-*Arthur Andersen* it is incontrovertible that state law governs the equitable estoppel and third-party beneficiary determinations."). *But see Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-28 (2d Cir. 2010) (failing to mention *Arthur Andersen* and failing to cite to any particular state law); *In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 895-96 (N.D. Cal. 2012) (reasoning that it is not clear whether *Arthur Andersen* meant to overrule federally created arbitration-by-estoppel precedent); *Kingsley Cap. Mgmt., LLC v. Sly*, 820 F. Supp. 2d 1011, 1022-23 (D. Ariz. 2011) (same).

No. 12-60922

## II.

Even if all four Defendants may compel the Plaintiffs to arbitrate their claims, the Plaintiffs nevertheless argue that their claims are outside the scope of the Provider Manual's arbitration clause and, therefore, not subject to arbitration. Ordinarily, whether a claim is subject to arbitration is a question for a court. *See JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). However, if the parties have clearly and unmistakably agreed to arbitrate arbitrability, certain threshold questions—such as whether a particular claim is subject to arbitration—are for the arbitrator, and not a court, to decide. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In this case, we conclude that this standard has been satisfied and that, consequently, the Plaintiffs must submit this argument to the arbitrator in the first instance.

It is undisputed that each Plaintiff is a party to a Provider Agreement with Caremark or CaremarkPCS. The Provider Agreement, incorporating the Provider Manual by reference, includes an arbitration clause, pursuant to which the Plaintiffs agreed to arbitrate "[a]ny and all disputes in connection with or arising out of the Provider Agreement . . . before a single arbitrator in accordance with the Rules of the American Arbitration Association" ("the AAA Rules"). The AAA Rules for commercial arbitration include Rule 7, which provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." In *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, we concluded that express incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. 687 F.3d 671, 675 (5th Cir. 2012) (collecting cases). Accordingly, there is clear and unmistakable evidence that the parties to the Provider Agreement agreed

16

No. 12-60922

to arbitrate arbitrability, and so we conclude that whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by the arbitrator, not a court.

## III.

### A.

Next, the Plaintiffs argue that the Provider Agreement and the Provider Manual's arbitration clause are procedurally and substantively unconscionable and therefore unenforceable. Although the Supreme Court has indicated that, under certain circumstances, questions of unconscionability must be submitted to the arbitrator in the first instance, *see Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2779 (2010), here, neither the Plaintiffs nor the Defendants contend that the Plaintiffs' unconscionability argument must be decided first by the arbitrator. In fact, the Defendants—the parties seeking to *compel* arbitration—asserted, both before the district court and on appeal, that the only argument advanced by the Plaintiffs that must be decided in the first instance by the arbitrator and not a court was the Plaintiffs' contention that their claims are not subject to arbitration. Rather, the Defendants, along with the Plaintiffs, have asked this court to address the Plaintiffs' unconscionability arguments in the first instance. If parties to an arbitration agreement do not agree to submit a particular issue to arbitration, then the court should decide that issue as it would any other question that the parties had not submitted to arbitration, namely independently. *See First Options*, 514 U.S. at 943. We proceed to decide this issue without remanding because although the district court applied Mississippi rather than Arizona law, we ultimately conclude that the same result is required by Arizona law.

### B.

Under Arizona law, "[a]n unconscionable contract is unenforceable." *Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013). Arizona law

recognizes two types of unconscionability: procedural and substantive. *Id.* "Procedural unconscionability addresses the fairness of the bargaining process, which 'is concerned with "unfair surprise," fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should.'" *Id.* (quoting *Maxwell v. Fidelity Fin. Servs, Inc.*, 907 P.2d 51, 57-58 (Ariz. 1995)). "In contrast, substantive unconscionability addresses the fairness of the terms of the contract itself.  A contract may be substantively unconscionable when the terms of the contract are so one-sided as to be overly oppressive or unduly harsh to one of the parties."  *Id.* (citation omitted). Importantly, the Plaintiffs bear the burden of proving an unconscionability-related defense to arbitration, *see Heinig v. Hudman*, 865 P.2d 110, 117-18 (Ariz. Ct. App. 1994), which, with respect to invalidating an arbitration clause, is "a high bar to meet," *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 947 (D. Ariz. 2011) (internal quotation marks omitted).  On review of the Plaintiffs' arguments, we conclude that neither the Provider Agreement nor the Provider Manual's arbitration clause is procedurally or substantively unconscionable.

### 1. Procedural Unconscionability

Under Arizona law, procedural unconscionability is concerned with "unfair surprise," and courts consider factors pertaining to

> the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible [and] whether there were alternative sources of supply of the goods in question.

*Maxwell*, 907 P.2d at 57-58 (quoting *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976)).  For the reasons that follow, we conclude that the Plaintiffs have failed to meet their burden of proof to satisfy this standard.

No. 12-60922

### *a. Contracts of adhesion*

The Plaintiffs argue that their agreements to arbitrate with the Defendants are procedurally unconscionable because the Defendants dictate the terms of participation in their patient networks and offer these terms on a "take it or leave it" basis.

> An adhesion contract is typically a standardized form "offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract."

*Broemmer v. Abortion Servs. of Phx., Ltd.*, 840 P.2d 1013, 1015 (Ariz. Ct. App. 1992) (quoting *Wheeler v. St. Joseph Hosp.*, 133 Cal. Rptr. 775, 783 (Cal. Ct. App. 1976)). For such a contract, "[t]he distinctive feature . . . is that the weaker party has no realistic choice as to its terms." *Id.* at 1016 (quoting *Wheeler*, 133 Cal. Rptr. at 783). However, a "conclusion that [a] contract [is] one of adhesion is not, of itself, determinative of its enforceability." *Id.* Rather, "[a] contract of adhesion is fully enforceable[] . . . unless the contract is also unduly oppressive or unconscionable." *Brady v. Universal Technical Inst. of Ariz., Inc.*, No. CV-09-1044-PHX-FJM, 2009 WL 5128577, at *2 (D. Ariz. Dec. 17, 2009) (citing *Broemmer*, 840 P.2d at 1016). "Mere inequality in bargaining power is not sufficient to invalidate an arbitration agreement." *EEOC v. Cheesecake Factory, Inc.*, No. CV 08-1207-PHX-NVW, 2009 WL 1259359, at *3 (D. Ariz. May 6, 2009) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). "Moreover, an agreement may be enforceable even if the terms offered are not negotiable." *Id.* (citing *Phx. Baptist Hosp. & Med. Ctr. v. Aiken*, 877 P.2d 1345, 1349 (Ariz. Ct. App. 1994); *Broemmer*, 840 P.2d at 1016).

The Plaintiffs have failed to present any evidence that they were prevented from contracting with another PBM or could not have abstained from

contracting with the Defendants at all.  The Plaintiffs submitted three identical affidavits in which the affiants alleged that Caremark is the largest PBM in Mississippi and controls a significant percentage of the state's prescription-filling business.  Based on this, the Plaintiffs reasoned that Caremark had "undisputed" control over the prescription-filling business for a large swath of Mississippi citizens.  Yet, beyond this affidavit evidence, the Plaintiffs have not supplied record evidence or apposite case law to contradict the conclusion that they failed to present any evidence that there were no other PBMs with which they could contract or that it was not economically feasible to refrain from contracting with the Defendants at all.  Given this and given the Plaintiffs' burden of proof, *Heinig*, 865 P.2d at 117-18, the Plaintiffs' lack of evidence is fatal to their adhesion challenge, *see Beus Gilbert PLLC v. Pettit*, No. 1 CA-CV 10-0650, 2011 WL 1949058, at *3 (Ariz. Ct. App. May 12, 2011) ("Although Pettit suggests he had no choice but to sign the agreement, he offers no evidence to support the proposition that he could not have rejected the arbitration provision and/or retain another law firm to represent him."); *see also Coup*, 823 F. Supp. 2d at 948-49 ("Even if Plaintiffs had shown that the terms of the [relevant agreements] were somehow grossly unfavorable to them, which they have not, their unconscionability argument would nonetheless fail because they have not made any showing of the lack of meaningful choice as necessary to establish procedural unconscionability." (citing *Pettit*, 2011 WL 1949058, at *3)).

### b. Inconspicuousness

The Plaintiffs argue that their agreements to arbitrate with the Defendants were so inconspicuously buried in the lengthy Provider Manual (the latest iteration of which includes over 200 pages, including appendices) that this renders their agreements to arbitrate procedurally unconscionable.  Under Arizona law, courts will enforce adhesion contracts unless the contract (or a term therein) "exceeds a party's reasonable expectations." *Banner Health v. Med. Sav.*

*Ins. Co.*, 163 P.3d 1096, 1108 (Ariz. Ct. App. 2007). "In determining whether a party enforcing an agreement had reason to believe [a] term exceeded the other party's reasonable expectations," Arizona law asks, *inter alia,* "whether the term is bizarre or oppressive, whether the term eviscerates non-standard terms specifically agreed to, whether the term eliminates the dominant purpose of the contract, whether the other party had an opportunity to read the term, and *whether the term is illegible or otherwise hidden from view.*" *Id.* (emphasis added) (citing *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 397 (Ariz. 1984)). In this case, the arbitration provision is clearly marked, both in the Provider Manual's table of contents and via a boldface heading later in the agreement, and appears in the same font and size as other sections of the parties' agreement.

On appeal, the Plaintiffs complain that the arbitration clause is "concealed" deep within the Provider Manual and that the Defendants took no steps to bring the clause to the Plaintiffs' attention, highlight it for them, warn them about it, negotiate its contours, or take any other action to ensure that they were made aware of it. However, the arbitration clause was no less conspicuous than any other provision of the Provider Manual and thus, as required by Arizona law, neither illegible nor hidden from view. *See Banner Health*, 163 P.3d at 1108. Moreover, Arizona case law expressly disclaims any duty on the part of the Defendants to draw the Plaintiffs' attention to all that they were agreeing to. The Plaintiffs' failure to familiarize themselves with what they signed does not render the Provider Manual's arbitration clause unconscionable or unenforceable. *See Rocz v. Drexel Burnham Lambert, Inc.*, 743 P.2d 971, 975 (Ariz. Ct. App. 1987) ("Parties cannot repudiate their written contracts by asserting that they neglected to read them or did not really mean them."); *see also Coup*, 823 F. Supp. 2d at 949 ("Plaintiffs' admitted failure to read the employee manual . . . do[es] not render [the] arbitration policy and clause

procedurally unconscionable." (citing *Rocz*, 743 P.2d at 975)). Consequently, the Plaintiffs may not escape their agreements on procedural-unconscionability grounds because the Defendants did not draw their attention to what they were signing. We therefore conclude that the Provider Manual's arbitration clause is not procedurally unconscionable; neither is it illegible or hidden from view, nor were the Defendants obligated to draw the Plaintiffs' attention to it.

### c. Amendments over the years

Before the district court, the Plaintiffs argued that they should not be bound by contracts signed and executed, in some cases, over sixteen years ago with entities far removed from the current CVS Caremark Corporation. In particular, the Plaintiffs asserted that when they first entered into their respective agreements, the PBM business was in its infancy such that the Plaintiffs could not have reasonably anticipated that the PBM with which they had contracted would some day be acquired by a competitor, which, coincidentally, would also be the largest chain of retail pharmacies in the country. The Plaintiffs repeat this argument in their opening brief but do not present any legal authority in support of their position, despite their burden of proof on this issue. *See Heinig*, 865 P.2d at 117-18. Moreover, despite the changed circumstances to which the Plaintiffs allude, they do not explain why their claims must be made in a judicial forum rather than an arbitral one. Accordingly, the Plaintiffs' agreement to arbitrate their claims is not procedurally unconscionable simply because they were made sixteen or seventeen years ago.[10]

---

[10] For the first time in their reply brief, the Plaintiffs complain that the Defendants retained the unilateral right to modify the terms of the parties' agreements at any time and without notice. Because the Plaintiffs have raised this argument for the first time in their reply brief, it is waived. *See Medina Cnty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 702 (5th Cir. 2010).

## 2. Substantive Unconscionability

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell*, 907 P.2d at 58; *see also Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1055 (Ariz. Ct. App. 2005) (factors showing substantive unconscionability include "contractual terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity"). "In Arizona, a case-by-case approach is used in determining whether the terms imposed under an arbitration agreement denies a potential litigant the opportunity to vindicate her rights." *Wernett*, 2009 WL 1955612, at *5 (citing *Batory v. Sears, Roebuck & Co.*, 456 F. Supp. 2d 1137, 1141 (D. Ariz. 2006)). As before, the Plaintiffs have failed to meet their burden of proof to satisfy this standard.

### a. Damages limitations

The Plaintiffs argue that their agreements to arbitrate are substantively unconscionable because they restrict any award of damages to only those enumerated in the Provider Manual. The district court found that neither party had addressed the relevant language of the Provider Manual or presented any argument with respect to what remedies are provided for. Because the Plaintiffs, who bear the burden of proving a defense to arbitration, *see Heinig*, 865 P.2d at 117-18, failed to provide any argument with respect to this issue, the district court declined to address it.

In their response to the Defendants' motion to compel arbitration, the Plaintiffs argued only that the arbitration clause purported to limit the arbitrator's ability to award statutory damages but did not provide any further explanation or argument. In their opening brief, the Plaintiffs assert that the remedies prohibited are "obviously" the ones that they asked for in their complaint, namely actual loss of business, other compensatory damages,

punitive damages, and injunctive relief. Despite this, the Plaintiffs do not explain, with reference to the language of the Provider Manual, what damages are or are not available. More fundamentally, this further elaboration on their argument was not included in their submissions to the district court. "The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal." *Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010). Therefore, we decline to address the Plaintiffs' damages-limitations argument.

### b. Costs of arbitration

The Plaintiffs argue that the costs of arbitration render their agreements to arbitrate substantively unconscionable because (1) they will not be able to afford travel for themselves, their attorneys, and any witnesses from Mississippi to Scottsdale, Arizona, and (2) they risk the possibility of having to pay costs and attorneys' fees in the event that the arbitrator sides with the Defendants.

"An arbitration agreement may be substantively unconscionable if the fees and costs to arbitrate are so excessive as to 'deny a potential litigant the opportunity to vindicate his or her rights.'" *Clark*, 307 P.3d at 79 (quoting *Harrington*, 119 P.3d at 1055); *see also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum."). However, the mere "risk that [a litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Randolph*, 531 U.S. at 91. Thus, "[t]he party seeking to invalidate an arbitration agreement on [the] grounds [of excessive fees or costs] has the burden of proving that arbitration would be prohibitively expensive." *Clark*, 307 P.3d at 80. Under Arizona law, such a showing requires the court to consider several factors:

No. 12-60922

First, the party seeking to invalidate the arbitration agreement must present evidence concerning the cost to arbitrate. This evidence cannot be speculative; it must be based on specific facts showing with reasonable certainty the likely costs of arbitration.

Second, a party must make a specific, individualized showing as to why he or she would be financially unable to bear the costs of arbitration. This evidence must consist of more than conclusory allegations stating a person is unable to pay the costs of arbitration. Rather, parties must show that based on their specific income/assets, they are unable to pay the likely costs of arbitration.

Third, a court must consider whether the arbitration agreement or the applicable arbitration rules referenced in the arbitration agreement permit a party to waive or reduce the costs of arbitration based on financial hardship.

*Id.* (citations omitted).

In this case, the Plaintiffs failed to present any specific, individualized evidence that they were likely to face prohibitive costs if forced to arbitrate their underlying claims. More fundamentally, the Plaintiffs' contention that they will not prevail before the arbitrator and will therefore have to bear costs and attorneys' fees is speculative and conclusory at best. Lastly, although not briefed by the parties, Arizona courts have noted that the AAA Rules provide for the waiver or reduction of fees based on "extreme hardship." *See Harrington*, 119 P.3d at 1055. Given this, the Plaintiffs' burden of proof, and the Plaintiffs' failure to point to any record evidence detailing what it will cost to travel to Arizona, who will be traveling, and how much costs will be, we conclude that the potential costs of arbitration do not render the arbitration clause substantively unconscionable. *See Clark*, 307 P.3d at 80; *Harrington*, 119 P.3d at 1055.

## CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.